## S. L. & J. H. BREWSTER *vs.* BAKER.

Where the owner of property stands by and sees another sell it as his own, to a bona fide purchaser, and makes no objection, and gives no notice of his rights, he will be held to have sanctioned the sale, and will not be permitted afterwards to assert his title, as against such purchaser.

The same rule prevails where the owner is informed of a sale of his property by another, upon credit, and does not object to it, or give the purchaser notice of his rights, but lies by and permits such purchaser to pay the purchase money as it becomes due, to the vendor, and receives the whole, or a portion of it, from the vendor.

By a written contract entered into between N. T. and S. P. T., the latter agreed to pay the former $1300 in installments, at different times, and in consideration thereof N. T. agreed that S. P. T. might have the possession and use of a certain canal boat, her tackle and furniture, unless default should be made in the payment of the said sum of $1300, or some part thereof, or unless S. P. T. should do, or attempt to do, any of the acts by such agreement prohibited; in either of which cases N. T. or his assigns might take possession of such boat, &c.  On the full payment of the said sum of $1300 N. T. was to execute and deliver to S. P. T. or his assigns, a bill of sale of said boat, &c. and put him or them in possession.  S. P. T. agreed not to transfer or attempt to transfer, the boat, without the consent of N. T. or to do any thing to prejudice his title.  In case default should be

made in the payment of the said sum of $1300, or any part thereof, N. T. was to have the right to take, and sell, the boat, &c. It was further provided that nothing contained in said contract should be so construed as to give S. P. T. any right or title to the boat, until such payment should be fully made; except the right to possess and use the same, in the manner and upon the conditions in such contract mentioned. *Held* that this instrument was in effect a *chattel mortgage,* and not a mere executory contract *to sell* the boat and give title upon the performance of a condition.

THIS was an action to recover the value of a canal boat, claimed as belonging to the plaintiffs, and which it was alleged in the complaint the defendant had converted to his own use. The defendant, by his answer, denied the allegations in the complaint, and alleged that in June, 1850, he purchased the boat of one Sidney B. Thompson, in whose name the same was registered in the canal offices, and in whose actual possession said boat then was, and for a long time previous had been. That he paid therefor the full value of said boat, and took possession thereof, under said purchase, without any notice or knowledge that the plaintiffs or any other person had any claim whatever on said boat; that the plaintiffs had immediate notice of said sale and received the whole or a large part of the money paid by the defendant to said Thompson, without any objection to such sale. That they afterwards demanded of him payment of a certain sum, viz. about $300, which they claimed to be due to them on said boat, and which the defendant refused to pay. And the defendant insisted he was the lawful owner of said boat and entitled to the possession thereof.

The plaintiffs, by their reply, denied the allegations in the answer, and alleged that by a certain contract or articles of agreement made and entered into on the 30th of April, 1849, by and between one Nathaniel Thompson of the first part, and the said Sidney P. Thompson of the second part, the latter agreed to pay the former the sum of $1300, at various times, and in consideration thereof, the party of the first part agreed that the said party of the second part might have the possession and use of the said boat N. B. Vanslyck, her tackle and furniture, unless default should be made in the payment of said sum of $1300, or

some part thereof, or unless the party of the second part should do or attempt to do any of the acts by the said agreement prohibited, in either of which cases the party of the first part or his assigns might take possession of the said boat, her tackle and furniture, and hold the same subject to the provisions therein contained ; and it was further provided that on the full payment of the said sum of $1300, the party of the first part was to execute and deliver to the party of the second part, or to his assigns, a bill of sale of the said boat and her tackle and furniture, and to put him or them in possession thereof, if the same should not then be in his or their possession ; and it was further provided that the party of the second part should not transfer or attempt to transfer the said boat to any person or persons whomsoever without the consent of the party of the first part, or his assigns, or to do or to attempt to do any act or acts by which the right or title of the party of the first part thereto, or his possession thereof, might be prejudiced ; and that in case default should be made in the payment of the said sum of $1300, or any part thereof, the party of the first part, or his assigns, should have the right to take and sell the said boat, her tackle and furniture at public vendue ; and it was further provided in and by the said contract or agreement, that nothing therein contained should be so construed as to give the party of the second part or his or their assigns, any right or title to the said boat, her tackle or furniture, until such payment should be fully made, except the right to possess and use the same in the manner and upon the conditions in the said agreement mentioned. And the plaintiffs further alleged that by an instrument in writing, under the hand and seal of the said Nathaniel Thompson, he the said Nathaniel Thompson, for a valuable consideration to him paid by the plaintiffs, assigned to them all his right, title and interest in the said contract ; and that the said Nathaniel Thompson did at the same time, in and by another instrument, under his hand and seal, sell, assign, and transfer to the plaintiffs the said canal boat, and her tackle, apparel and furniture ; of all which the defendant had notice before he came into the possession of the said boat, or paid or advanced any money to said Thompson therefor, and that

the plaintiffs at and before the commencement of this action were and still are the owners thereof, and that there was due and owing to the plaintiffs on the said contract, at the commencement of this action, the sum of $500.

The cause was referred to H. Humphrey, Esq. as sole referee, and was tried before him at the city of Rochester, on the 21st day of December, 1852. On the trial, it was admitted by the defendant's counsel, that on the 16th day of October, 1851, the canal boat mentioned in the complaint in this action was demanded by the plaintiffs of the defendant, and that the defendant refused to give her up, and that the defendant was in possession of said boat at the time. The plaintiff next read in evidence a contract, dated April 30, 1849, of which the following is a copy, to wit : " Articles of agreement made the 13th day of April, 1849, between N. Thompson of the city of Rochester, of the first part, and Sidney P. Thompson, of the city of Syracuse, of the second part, as follows : *First.* The party of the second part agrees to pay to the party of first part the sum of $1300 in manner as follows, viz. : $50 immediately. $200 on the 20th day of June next. $100 on the 20th day of August next. $200 on the 29th day of October next. $150 on the 20th day of June, 1850. $150 on the 20th day of August, 1850. $150 on the 20th day of October, 1850. $100 on the 20th day of June, 1851. $100 on the 20th day of July, 1851. $100 on the 20th day of August, 1851. *Second.* In consideration of the premises the party of the first part agrees that the party of the second part may have the possession and use of the boat N. B. Vanslyck, late built by the party of the first part, her tackle and furniture, unless default shall be made in the payment of the above mentioned sum, or some part thereof ; or unless the party of the second part shall do or attempt to do any of the acts hereinafter prohibited ; in either of which cases the party of the first part, or his assigns, may take possession of the said boat, her tackle and furniture, and hold the same subject to the provisions hereinafter contained. *Third.* On the full payment of the said sum of $1300 as above provided, the party of the first part agrees to execute and deliver to the party of the second part, or

Brewster *v.* Baker.

to his assigns, a bill of sale of said boat and her tackle and furniture, and to put him or them in possession thereof, if the same shall not then be in his or their possession. *Fourth.* The party of the second part shall not take or attempt to take the said boat, her tackle, or furniture, out of the jurisdiction of this state, or transfer or attempt to transfer the same to any person or persons whomsoever, without the consent of the party of the first part, or his assigns, or do or attempt to do any act or acts, by which the right or title of the party of the first part thereto, or his possession thereof, may be prejudiced. *Fifth.* In case the party of the second part shall make default in the payment of the said sum of $1300, or any part thereof, the party of the first part, or his assigns, shall have the right to take and sell the said boat, her tackle and furniture, at public vendue, on giving such notice of the time and place of sale as is required by law in sales of personal property upon process of execution, issued out of the courts of record ; and in such case the proceeds of the sale shall be applied to the payment of the balance then remaining unpaid, interest and costs, including traveling expenses and time ; and if there be a surplus, it shall be paid to the party of the second part, or his assigns ; but nothing herein contained shall be so construed as to give the party of the second part, his or their assigns, any right in, or title to, the said boat, her tackle and furniture, until such payment shall be fully made, except the right to possess and use the same, in the manner and upon the conditions hereinbefore mentioned. In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

SIDNEY P. THOMPSON."

The plaintiffs then read in evidence an assignment of said contract from Nathaniel Thompson to them ; also a bill of sale of said boat from N. Thompson to the plaintiffs ; said assignment and bill of sale were dated July 25, 1849.

The defendant then examined Sidney B. Thompson as a witness, who testified that he took possession of the boat in May, 1849 ; that he sold the boat to the defendant in June, 1850, or traded with him for another boat and $660 or $670 in cash ; that

he saw Mr. Brewster, one of the plaintiffs, in Rochester, in July after the sale, the third or fourth day; the witness had sent Mr. Brewster $200 on the 21st of June; that he told Brewster on that occasion that he had disposed of the boat, and that he would send him in a few days $200; that Mr. Baker was going to pay him some money, and he would pay it to him; that witness did send him $215 on the 13th July; that he got the first $200 from Baker that he sent June 21st. On his cross-examination the witness testified that he told Brewster in July, that he had disposed of the boat, and that he would pay him the balance, and take up the notes as they became due. The referee reported in favor of the plaintiffs for the sum of $374,82; and from the judgment entered on the report, the defendant appealed.

*Sedgwick & Outwater,* for the appellant.

*S. Mathews,* for the respondent.

*By the Court,* JOHNSON, J. It is a well established principle, that where the owner of property stands by, and sees another sell it as his own to a bona fide purchaser, and makes no objection and gives no notice of his rights, he will be held to have sanctioned the sale, and will not afterwards be permitted to assert his title, as against such purchaser. And the same rule I apprehend prevails, where the owner is informed of a sale of his property by another upon credit, and does not object to it or give the purchaser notice of his rights, but lies by and permits such purchaser to pay the purchase money as it becomes due, to the vendor, and receives the whole or a portion of it from the vendor.

The defendant purchased the boat in question from Sidney B. Thompson, who had it in possession and who informed him that he, Thompson, was the owner and that there were no incumbrances upon it. He gave Thompson another boat in exchange, and $660 or $670 as boot money, part of which was paid down and the residue secured by note payable at a future day. This was about the middle of June, 1850. On the 21st of June, Thomp-

son sent the plaintiffs $200 of the money received, and on the third or fourth of July following saw one of the plaintiffs and informed him of the sale to the defendant, and that he was to have more money from the defendant, which he, Thompson, would send the plaintiffs. The defendant after this paid Thompson $200, which he paid the plaintiffs on the 13th of July.

The plaintiffs made no objection to the sale, as far as appears, and gave no notice to the defendant of their claim until the 16th of October, when they demanded the boat. Under these circumstances it seems to me they must be held to have consented to the sale, and are estopped from asserting their title, against the defendant. When informed of the sale and that part of the purchase money was still to be paid by the purchaser, they should have objected, and given notice, and not lain by and permitted him to pay the money supposing he had acquired a good title. Having done so, and received the money or a portion of it, it is too late for them to claim the property. Their remedy is upon Thompson, who was in privity with them and was ostensibly the owner. On this ground alone I am of opinion the judgment should be set aside and a new trial granted.

But unless I have mistaken the character of the instrument under which the plaintiffs claim as assignees, it is in effect a chattel mortgage, and not a mere executory contract to sell and give title conditionally. It purports to be an instrument *inter partes,* although it is in fact signed by one only. It is true it contains a stipulation that the party of the first part shall upon payment of the stipulated price, execute and deliver to the party of the second part a bill of sale of said boat. And there is also a stipulation that the instrument shall not be so construed as to give the party of the second part or his assigns any right in or title to the boat, furniture, &c. except the right to possess and use, until the payments shall be fully made.

But we must see what is the legal effect of the various provisions of the instrument. Courts are not bound by the construction the parties agree shall be put upon a contract, when such construction is manifestly contrary to the legal effect of all its provisions, and the rights of third persons have intervened.

By the second clause of the instrument it is stipulated that the party of the second part shall have the possession and use of the boat, &c. unless he shall make default in the payment of the purchase price or some part thereof, or shall do or attempt to do any of the acts prohibited by the instrument. In which case it is provided, the party of the first part may take possession of said boat, &c. and hold the same, subject to the provisions thereinafter contained. These provisions are contained in the fifth clause, and give the party of the first part the right, upon default in payment, to take and sell the boat, &c. at public vendue, on giving such notice as is required in cases of sales of personal property upon execution. The proceeds of the sale are to be applied to the payment of the balance due for the price of the boat, furniture, &c. and the costs, expenses and time spent about the sale, and the residue is to be paid over to the party of the second part. Whose interest in the boat was to be sold under this provision? Clearly that of the party of the second part. The avails were to be applied for his benefit until the debt was canceled, and the surplus paid over to him. Certainly the party of the first part was not stipulating that his property in which the other party had no interest should be sold to satisfy the default of such other party, and to give the latter the benefit of the surplus. And yet such would be the result if the instrument is to be held a mere conditional sale. It is just the case of a sale upon a chattel mortgage by a mortgagee. The instrument has all the essential characteristics of a chattel mortgage. The party of the second part, as the necessary legal result of the arrangement, took the title to the property, which he immediately transferred or mortgaged back, and agreed that his interest, which was a mere right to redeem the title from the other party, might be foreclosed and cut off in case of his default. This determines the character of the instrument, and distinguishes it from a mere agreement to sell and give title upon a condition to be performed. The provision in regard to how the instrument should be construed in reference to the person in whom the right and title remained, was

either ignorantly inserted, or designedly, with a view of disguising the real nature of the transaction and evading the statute. '

These contracts for the sale of personal property, by which the title is attempted to be retained by the vendor while the possession and right to use are transferred to the purchaser, are liable to all the objections, and attended with all the mischievous consequences, of a conveyance of the title to a chattel by a vendor while he retains the possession and control, which the statute has so carefully hedged about. They are not entitled to any very favorable consideration, and courts are bound at least to see that the salutary provisions of the statute are not annulled or evaded by the mere form and phrase in which a transaction is committed to writing. The substance and essence of the transaction is to control.

If this is nothing more or less than a chattel mortgage—as in my opinion it clearly is—it is void as against the defendant, there being no evidence that it was ever filed or entered of record. The judgment of the special term must therefore be set aside and a new trial granted, with costs to abide the event of the suit.

[MONROE GENERAL TERM, December 5, 1853. *Welles, Johnson* and *T. R. Strong,* Justices.]