Cheeney *v.* Arnold.

[MADISON GENERAL TERM, September 12, 1854. *Gray, Shankland* and *Mason,* Justices.]

## CHEENEY and wife *vs.* ARNOLD.

.A party, for the purpose of proving the due execution of a will, executed nearly twenty-five years ago, examined one of the subscribing witnesses, who was about ninety years of age and very infirm, and nearly blind, who testified that he was acquainted with the testator, and wrote his will for him, and saw him sign it, and witnessed its execution, together with two other witnesses; that he read the will over to the testator, as he wrote it; and that the witnesses subscribed their names in the presence of the testator and of each other. Another of the subscribing witnesses testified that he was only 15 or 16 years of age at the time the will was executed; that he recollected signing his name thereto as a witness, and that the other two subscribing witnesses also signed their names as witnesses, in his presence, at the same time; that one of them asked him to sign the will in the presence of the testator, and showed him and the other witness where to place their names; that he understood, at the time, that the instrument was a will, but he imperfectly recollected what occurred at the time

Cheeney *v.* Arnold.

of its execution. The third subscribing witness was dead. *Held,* that the will was sufficiently established, by competent and legal evidence, to warrant the jury in finding in favor of its due execution by the testator; the case being one wherein the most liberal presumptions, in favor of the due execution of the will, should be indulged.

After the lapse of nearly twenty-five years, since the execution of a will, unless it appears affirmatively that the same was not duly executed, the law will not set it aside, or declare it invalid, because the attesting witnesses do not recollect that all the requirements of the statute were complied with.

It is within the discretion of the judge, on the trial of a cause, under particular circumstances, to permit leading questions to be put to a witness. But this discretionary power to vary the general rule should be exercised only so far as the purposes of justice plainly require; and must be regulated by the circumstances of the case.

Where a subscribing witness to a will, executed nearly twenty-five years since, had, in consequence of his great age, become so blind that he was unable to discover his own handwriting on the will, but there was no pretense that he was imbecile, or incompetent to comprehend the force of the questions put to him; *it was held,* that under these circumstances, it was legal and proper to allow questions in a leading form to be put to the witness, in order to direct his attention to the will, and to the fact that he had written it for the testator, and also to all the principal facts ordinarily attending the execution of a will.

It is a well settled rule of law that if the owner of property stands by and allows another to sell it, as his own, to a *bona fide* purchaser, without objection, and without giving notice of his claim or title thereto, he will be held to have consented to, and sanctioned, the sale; and will not be permitted, afterwards, to claim such property, of the purchaser.

THE complaint alleged that the plaintiffs in right of Phila Cheeney were lawfully possessed of, or entitled to, a certain farm in the town of New Berlin, Chenango county, formerly owned by Charles Harris, deceased, the father of said Phila, she being his only child. The plaintiffs claimed this farm in fee, subject to a dower right therein of Betsey Pike, formerly the wife of Charles Harris, deceased. That the plaintiffs being so possessed of said farm, the defendant entered into the possession thereof, on or before the first day of September, 1845, and had ever since continued to occupy the same, and unlawfully withholds the possession from said plaintiffs. The plaintiffs demanded judgment that they recover possession of the premises, subject to said right of dower, and also damages for the deten-

tion of said possession. The answer averred title in the defend-. ant, and denied title in the plaintiffs. It also denied that Charles Harris by his last will and testament devised said farm to his wife Betsey Harris, now Betsey Pike. It also alleged that Phila Cheeney was not the lawful child and heir at law of Charles Harris; and also that the plaintiffs were knowing of the purchase of the farm by the defendant of Betsey Harris, widow of Charles Harris, deceased; and that they advised and consented to such sale to the defendant, at the time it was made. The cause was tried before a jury, at the Chenango circuit, in August, 1851, and a verdict rendered for the defendant.

The cause was submitted without argument, on a motion to set aside the verdict, and for a new trial.

*H. R. Mygatt*, for the plaintiffs.

*H. Bennett*, for the defendant.

*By the Court*, CRIPPEN, P. J. It appears from the case that most of the testimony introduced on the trial had either been taken on commission or conditionally, under the statute. Nearly every question put to the witnesses on the part of the defendant was objected to by the plaintiffs' counsel, and the answers taken subject to such objections. The same objections were again made on the trial and overruled by the court. Upon a careful examination of the testimony, and the various objections made by the plaintiffs' counsel thereto, we are satisfied that no material error was committed by the learned justice in his rulings upon such objections. The plaintiffs, to maintain their action, proved title to the premises in question in Charles Harris at the time of his death; that he died in the year 1828, leaving Betsey Harris his widow and Phila Cheeney his only child, him surviving; that the widow had since married a Mr. Pike, and that the defendant had lived on said premises nearly twenty years. After making this proof the plaintiffs rested.

The defendant, in order to establish the last will and testament of Charles Harris, deceased, introduced the testimony of

Cheeney *v.* Arnold.

Barnabas Brown, taken conditionally, after first proving that the witness was about ninety years of age, and so infirm as to be unable to attend the trial. It appeared by the testimony of the witness, that he had lived in the town of New Berlin for the period of about fifty years; that he was nearly blind; that he was acquainted with Charles Harris in his lifetime, and wrote his last will and testament for him, and saw him sign it, and witnessed its execution, with Mr. Delong and Mr. Steere; that he wrote the will according to the directions of the testator, and read it over to him as he wrote it; that the witnesses subscribed their names in the presence of the testator and in presence of each other. It appeared that the witness Delong was dead.

The testimony of Mr. Steere, taken on commission, was introduced on the part of the defendant, from which it appeared that he was only 15 or 16 years of age at the time he signed his name as a witness to the execution of said will; he recollected signing his name thereto, and that Mr. Brown and Mr. Delong also signed their names as witnesses, in his presence, at the same time. He resided near Mr. Harris when he died. Mr. Brown asked the witness to sign the will, in the presence of the testator, and showed him and Mr. Steere where to place their names as witnesses. The witness stated that he understood, at the time he signed the instrument as a witness, it was a will, but he imperfectly recollected what occurred at the time of its execution.

We are satisfied, after a careful and attentive examination of the testimony, that the will in question was sufficiently established, by competent and legal evidence, to warrant the jury in finding in favor of its due execution by the testator. The case is one wherein the most liberal presumptions in favor of the due execution of the will should be sanctioned. The lapse of time may well obstruct and obliterate the memory of the witnesses. Mr. Brown, one of the witnesses and the person who wrote the will, is over 90 years of age; he has become blind, so that he cannot discover his signature as one of the attesting witnesses. One of the witnesses is dead, and the third resides in the state of Illinois. He was a mere boy at the time the will was made, and is now unable to recollect the particulars of what occurred

at the time of its execution.   Nearly or quite 25 years have elapsed since the making of said will, during which period the witnesses have had no occasion to call to their recollections the occurrences that transpired at the time of its execution.   It appeared, during the trial, that the will was admitted to probate in the year 1820.

Where the witnesses are dead, or from lapse of time do not remember the circumstances attending the attestation, the law, after the diligent production of all the evidence existing, if there are no circumstances of suspicion, will presume a proper execution of the will, particularly where the attesting clause is full. (*Butler* v. *Benson,* 1 *Barb. S. C. R.* 526.)   The attesting clause of the will in question declared that it was " signed, sealed, published, propounded and declared to be the last will and testament of Charles Harris, in the presence of us who have subscribed our names as witnesses in the presence of the testator ;" after which the names of the three attesting witnesses immediately follow.   The mere inability of the witnesses to recollect whether the requirements of the statute had or had not been complied with, is not sufficient to invalidate the will. (*Brinckerhoof* v. *Remsen,* 8 *Paige,* 499 ; *S. C.* 26 *Wend.* 325.)

If the witnesses were all dead, the proof of their handwriting would be sufficient to establish the due execution of the instrument by the testator.   After the lapse of nearly 25 years, unless it appears affirmatively that the will was not duly executed, the law will not set it aside, or declare it invalid, because the attesting witnesses do not recollect that all the requirements were complied with.   A different rule would be unjust, as well as unreasonable.   It cannot be expected that the memory of the witnesses will retain, for so great a length of time, all the facts and circumstances occurring at the time of its execution.   The law requires no such absurdity.

No error was committed by the defendant's counsel in the manner of putting questions to the witness Barnabas Brown, under the circumstances of the case.   Length of years had so far obscured his vision as to render him unable to discover his

Cheeney *v.* Arnold.

own handwriting, on the paper containing it. It was therefore entirely legal and proper to direct his attention to the will and to the fact that he had written it for Mr. Harris, and also to all the principal facts ordinarily occurring upon the transaction of such business. It was not pretended that the witness was merely imbecile, or that he was not fully competent to comprehend the force and effect of the questions put to him; he could not look at and discern the instrument; he could not, from an examination of it, know or ascertain the names of, or who were the attesting witnesses to its execution; nor could he discover the manner and form of execution of the testator. Under such circumstances it was not improper to allow questions in a leading form to be put to the witness, in the manner adopted in this case.

Where a witness has become blind, a writing may even be read over to him to refresh his recollection. (1 *Greenl. Ev.* § 439.) Leading questions are permitted, even in a direct examination, where an omission in the witness' testimony is evidently caused by a want of recollection, which a suggestion may assist. (*Id.* § 435.) It is within the discretion of the judge, at the trial, under particular circumstances, to permit leading questions to be put to a witness. This discretionary power to vary the general rule should be exercised only so far as the purposes of justice plainly require it; and must be regulated by the circumstances of the case. (*Moody* v. *Rowell*, 17 *Pick.* 498.) We do not discover in the case at bar that the judge in any manner abused the discretion vested in him, by allowing leading questions to be put to the witness Brown.

The judge charged the jury, that if the will of Charles Harris was established by satisfactory evidence, it entitled the defendant to a verdict in his favor. The testator devised the farm in question to his wife, with power to sell and convey the same. The whole proof upon the question of the due execution of the will was properly submitted to the jury to pass upon. We have no doubt that the testimony was sufficient to go to the jury, and the verdict in favor of the due execution of the will should not be disturbed.

Evidence was given on the trial, going to establish the illegitimacy of the plaintiff Phila Cheeney. The judge charged the jury, if they should find from the testimony that she was not the legitimate child of Charles Harris, deceased, the plaintiffs should not recover. This branch of the case was properly submitted to the jury by the learned judge, at the trial.

Evidence was also given on the part of the defendant, going to establish the consent of the plaintiffs to the sale of the premises, by the widow of Charles Harris, deceased, to the defendant, and the payment of the purchase money to her. The judge charged the jury that if they were satisfied, from the testimony, that Phila Cheeney consented to the sale, or was present and made no objection, or encouraged the sale to, and purchase by, the defendant, she could not afterwards be allowed to set up a title to, or claim said premises of the purchaser. The proof established a sale and conveyance from Mrs. Harris to the defendant. It seemed to be conceded on the trial, or at least not disputed, that Mrs. Harris conveyed the premises in question to the defendant, and that he took possession under such conveyance as early as the year 1835, and had ever since occupied the same. The judge properly instructed the jury upon this branch of the case. It is a well settled rule of law, that if the owner of property stands by and allows another to sell it, as his own, to a *bona fide* purchaser, without objection and without giving notice of his claim thereto, he will be held to have consented to, and sanctioned, the sale, and will not afterwards be permitted to claim such property of the purchaser. This is a sound principle, founded upon the plainest dictates of fair dealing and common honesty. (*Brewster* v. *Baker*, 16 *Barb.* 613.) It does not appear on what ground the jury rested their verdict in favor of the defendant. The execution of the last will and testament of Charles Harris, deceased, and the legitimacy of Phila Cheeney, who claimed to be his child and only heir at law, were the principal questions litigated on the trial. Some evidence was given by the defendant tending to establish the consent of Phila Cheeney to the sale and conveyance to him of said premises. Con-

flicting testimony was given upon the two last points, and the verdict of the jury thereon must be final. The judgment must be affirmed, with costs.

GRAY, J., gave no opinion.

Judgment affirmed.

MADISON GENERAL TERM, September 12, 1854. *Gray, Shankland, Crippen* and *Mason,* Justices.]