HERKIMER COUNTY.—HON. AMOS H. PRESCOTT, SURROGATE—
SEPTEMBER, 1872.

## NORTON *v.* NORTON.

### *In the matter of the probate of the Last Will and Testament of* MORGAN NORTON, *deceased.*

Where there is a full attestation clause, and the only witness, so far as he testifies affirmatively, supports due execution, the fact that he testifies in the negative as to some essential formalities, if it may be reasonably explained by presuming non-recollection, is not a reason for refusing probate.

Testator, an active and competent business man, wrote his own will, with full attestation clause. The will was produced from a place of safe-keeping among his papers, and the blank for the date appeared filled and the signatures made with the same ink, and apparently at the same time. The only surviving witness testified that he and the other witness signed immediately after testator's request to him that he should witness a paper which the testator produced as his will; but that according to his recollection, the testator did not sign in their presence nor acknowledge his signature, *Held,* sufficient to establish execution and publication.

Where there is no suggestion of incapacity, fraud or undue influence, the hardship or injustice of the will can have no weight in determining the sufficiency of the evidence of formal execution.*

THIS was a proceeding for the probate of the last will and testament of Morgan Norton, deceased.

---

* Compare *Sanders v. Styles, ante* p. 1, and *Matter of Stewart, post.*

NORTON *v.* NORTON.

The will was offered for probate by Rhoda C. Norton, the executrix therein named, and the principal legatee.

The probate was opposed by Mary A. Norton, a daughter of the testator by a former wife.

The will bore date, December 13th, 1861. The testator died in the month of September, 1872. The will was in the handwriting of the testator. There was a full attestation clause, also in the handwriting of the testator. One of the witnesses to the will died sometime before the testator. The testator died, leaving him surviving his widow, Rhoda C. Norton, who was named as executrix in the will, and four children, one of whom, Mary A. Norton, a daughter by a former wife, appeared and contested the validity of the will. The children surviving were each daughters, and the other three were children of the last marriage. The testator was last married in the year 1846.

DEWEY *and* FISKE, *for the proponent of the will.*

SMITH *and* HENDERSON *for* MARY A. NORTON *in opposition.*

THE SURROGATE.—The only questions now under consideration related to the execution of the will. The evidence clearly established the fact that the testator, at the time of the execution of the will, was in the full possession of his mental faculties, and there was no question raised, but that he was a man of decided capacity. The estate was quite large, consisting mostly of real estate, and is principally devised to his late wife.

The evidence of the surviving subscribing witness was as follows:

Benoni H. Hemminway, being duly sworn, testified:

" I now reside at Russel, in St. Lawrence County. In December, 1861, I lived in the town of Norway, and knew Morgan Norton in his life-time. He lived in Nor-

way. I resided on his place, about 40 rods from his residence. I went there in 1861, at his request. I found him at his house. It was the last part of the year 1861. Lyman Carr was present at this time, I think. I found him in his private room. He said he sent for me to come and witness his last will and testament. He left his private room and went out. He soon came back with a paper in his hand, and laid it down on his writing desk, and asked me to sign it. I signed the paper. The paper produced [the paper spoken of by the witness is the last will and testament, dated December 13th, 1861,] is my handwriting, and I suppose that to be the paper. He was present, and Mr. Carr. After I signed it, Mr. Carr took the seat at the desk that I had occupied, and I supposed he signed it. I understood he sat down for that purpose. I went away soon. Carr was present when he asked me to witness his last will and testament. I had known him for some length of time. He was not sick a-bed at that time. I did not notice but that he appeared as he had for the last four or five months. He was lame as usual. He said nothing to me except that he wanted me to witness his last will and testament, and then he got the paper and asked me to sign it."

On his cross-examination, the witness further testified, that " he went out into the kitchen, and I did not see him. He came back and laid the paper down. I think he did not ask me to sign again after he brought in the paper. I then signed it without any more being said. I did not see him speak or motion to Mr. Carr as I left my seat. Mr. Carr took it. I did not notice. Mr. Carr signed his name. I did not stand and look at him. I supposed he signed, because his signature is there. I have no means of knowing this paper except from my own signature upon

it. I should not know it was the same paper except from my signature. I cannot swear that I *saw* Mr. Norton write. I don't think I *saw* him take a pen while I was there. I have no recollection of his showing me a signature which he said was his. After Mr. Carr had signed, Mr. Norton picked up the paper and laid it away. I do not recollect of acting on any other request except the one he first made. I have no recollection of anything except what he said before he got the paper. I recollect he came in, and laid the paper down. The writing mentioned was on his desk. I recollect I took the seat at the desk and signed before Mr. Carr did; and after I signed, Mr. Carr took the same seat. Those things are clear in my mind.

" I can't tell the appearance of the paper at the time I signed. I did not see any writing or seals that I recollect. I think I saw no seal on the paper. The paper was not opened or exhibited to me. I am as clear in my own mind about that as upon any other thing that I have testified."

On his re-examination the witness testified: " There was nothing read to me from the paper that I recollect. My opinion is, that there was not anything read from the paper. I had seen Mr. Norton write his name, but I am not well enough acquainted with his hand-writing to swear to it. I did not place my mind strongly on what occurred, and it has seldom crossed my mind since. It is my candid opinion he did not sign the paper while I was there. I never signed but one. paper with Mr. Carr at Mr. Norton's house."

On his re-cross- examination the witness further testified : " The transaction made some impression on my mind at the time, and for a short time, when my mind turned to that, I might think of some things that happened at that time. I don't think I have left out

anything that occurred at that time. It was an unusual thing for me. I have not thought of this transaction often since it occurred."

The subscribing witness is a man unacquainted with the business of making wills, and therefore would not be likely to remember what did occur, especially after the lapse of time intervening between the transaction and the time when he was sworn as a witness, a period of almost eleven years. He distinctly remembers, however, that he was sent for by the testator, and that when he arrived, he found him in company with Carr, the other witness, and of what had occurred between the testator and Carr, before he arrived, he had no knowledge. Carr was doubtless present for the purpose of witnessing the will. As soon as the witness arrived, the testator said to him, in the presence of Carr, that he had sent for him to come and witness his last will and testament. The testator then stepped into another room, returning in a moment, and laid the paper down upon his desk. The witness came to witness a will,—was told so,—he sat down at the desk and signed his name to the paper. Carr, the other witness, signed immediately after him, and all this occurred in the presence of the two witnesses and the testator. The witness has no recollection that the testator signed the will at that time, or made any other declaration, except the one before referred to, or that anything was read to him, and has no recollection of seeing any signature or seal or writing, or that the testator had a pen in his hand.

The evidence, taken altogether, shows, in my judgment, simply, that the witness fails to remember what did occur. His opinion of what took place is not evidence, and amounts to nothing. The witness thinks he did not see any writing whatever. His name is

signed on the first line below the attestation clause, and so near to it, that it would be almost impossible for the witness to write his name in the manner in which it is written, without seeing the writing above. The will and the attestation clause are in the same hand-writing, and in the same ink, except the date; and the signatures of the testator and the witnesses, and the date of the will, are in the same ink, and apparently made at the same time.

In this case, the will and the attestation clause are clearly in the hand-writing of the testator, and the evidence is clear that the testator deliberately attempted to make his will, while in the full possession of all his mental and intellectual faculties. The will is carefully and properly drawn for the purpose of carrying out the obvious purposes of the testator, and he adds to it a full attestation clause. When that clause was written, the testator learned, beyond a doubt, what was necessary to be done in order to have the will properly and legally executed. He must have known and then understood that it should be signed, declared, and published, and the witnesses requested to subscribe the same. He could not have written the attestation clause without such an understanding, if he was a man of fair capacity, which is conceded. He afterwards told his wife he had made his will, and after his death, the same was found in his safe, carefully preserved, with all the appearance of due execution, and there are no circumstances of suspicion proved or suggested; and the testator, having made the will himself, without assistance or advice, so far as it appears, there can be no suspicion of fraud or imposition, and the only question in the case is, as to whether or not the testator has failed, in consequence of technical difficulties, in accomplish-

ing what he clearly designed. I do not think he has. The evidence is conclusive to my mind, that on the occasion testified to by Mr. Hemminway, the will having been prepared before, except the date, that he signed the will then and there, in the presence of the two witnesses, and properly published the same, and requested them to subscribe it as witnesses to its due execution, and also inserted the date.

The evidence discloses that the testator had been a business man all his life-time. What is probable under the circumstances? If the will was signed at the time it was attested, it is valid beyond a doubt. Would the testator simply procure the signatures of the two witnesses, then dismiss them, lay the will aside, and leave the date and signature blank? If he knew enough to write the will, and the attestation clause, he certainly would understand that it must be executed in the presence of the witnesses. Hemminway swears that after the witnesses had signed, he picked it up and laid it away. The hand-writing of the testator, and the subscribing witness that is since dead, have been properly proved according to law.

The following cases are referred to upon the question of what is necessary, in making a valid will, in regard to signing declaration and publication. In *Chaffee* v. *The Baptist Missionary Convention* (10 *Paige*, 85,) the Chancellor says that prudence requires that a proper attestation clause should be drawn, showing that all the statute formalities were complied with, not only as presumptive evidence of the facts, in case of the death of the witnesses, or when from lapse of time they cannot recollect what did take place," &c.

" The onus of satisfying the Court that these forms were complied with, lies upon the party seeking to establish the will. But the fact of such compliance may be

proved by other evidence or inferred from circumstances, where the subscribing witnesses are dead or absent or otherwise incapacitated to give testimony, or where, from the lapse of time, or otherwise, they are unable to recollect whether the requisite formalities were observed at the time when they witnessed the execution of the instrument."

In that case, the will was offered for probate within three or four years after it was executed, and it appeared clear affirmatively by the evidence of the witnesses, that the will was not signed or acknowledged in the presence of the witnesses.

In the case of *Jauncy* v. *Thorne* (2 *Barb. Ch.*, 40), WALWORTH, Chancellor, decided that, " a will may be sustained even in opposition to the positive testimony of one or more of the subscribing witnesses who either mistakenly or correctly swear that the formalities required by the statute were not complied with, if, from other testimony in the case, the court or jury is satisfied that the contrary was the fact." In this case the will was held good and admitted to probate. Ten years had elapsed after the transaction, and the Chancellor refers to the fact as important in estimating the character of the evidence, and the weight it should have in determining the question of due execution, and the rule laid down in the case is substantially this, that the subscribing witnesses must understand that it is the testator's will which they are attesting, and that the testator intended to admit that he had signed, sealed and published it as such.

In *Lewis* v. *Lewis*, (11 *N. Y.* 221), the will was executed in 1849 and was propounded in 1850. The witnesses therefore should have had a good recollection of the facts, and one of them did appear to have such recollection, and stated the facts with much particularity;

and it clearly appeared from the evidence that the will was defectively executed, but Judge ALLEN in his opinion says: "Mere want of recollection on the part of the witnesses will not invalidate the instrument, and, in the cases cited by counsel, the courts establishing the wills propounded have done so upon the ground that they were satisfied, from the circumstances proved, that the wills were duly executed, and that the witnesses had forgotten the facts, thus relieving the parties interested against the infirmities of humanity and the uncertainty of human recollection." A number of authorities are cited to sustain the above proposition.

The case of *Orser* v. *Orser* (24 *N. Y.*, 51), is very much like the case now under consideration in many respects. One of the subscribing witnesses had died; there was an attestation to the will, stating all the particulars requisite to its valid execution and publication and signed by two witnesses; the other witness could not remember that the decedent declared the instrument to be his will, or acknowledged his signature. The only additional evidence in the case was the evidence in regard to the subscribing witness who was dead, and that simply was that it was in his hand-writing; that he was a justice of the peace, and in the habit of drawing and attesting wills.

Judge SELDEN, in delivering the opinion of the Court, says: "In the present case there were two witnesses, one of whom was dead, and the other testified upon the trial that the will was not signed or the signature thereto acknowledged in his presence, and that it was not declared by the testator to be his will. He further stated that there was conversation between the testator and the deceased witness, which he could not remember, but he was sure that nothing was said in that conversation about the will. The certificate of attesta-

tion was full, and showed, if true, a perfect compliance with the provisions of the statute; and the signatures of the testator and the deceased witness were shown to be genuine. The witness who was sworn had never before been called upon to witness a will, and knew nothing of the formalities required. Under the circumstances there can, I apprehend, be no doubt that a jury would be at liberty to find that the will was duly executed."

The statute provides, that when one or more of the subscribing witnesses are dead and the others are examined, proof may be taken of the hand-writing of the testator and of the witnesses who are dead, and also of other circumstances tending to prove the will. The effect of this provision, of course, is to make the certificate of attestation signed by the deceased witness evidence to some extent of the facts stated in it.

The case of the trustees of the *Theological Seminary of Auburn* v. *Calhoun* (25 *N. Y.*, 422), decides that the publication of a will may be established upon the testimony of one of the attesting witnesses, in opposition to the other; and the case of *Tarrant* v. *Ware*, cited in the same case (see note) holds the same, and that the court must determine, from all of the evidence and circumstances, whether or not a doubt remains as to the direction of the statutes having been complied with.

The case of *Peck* v. *Cary* (27 *N. Y.*, 9), decides that "the signature of the testator, or his acknowledgment thereof in the presence of the witnesses, and his publication of the instrument as his will, may be proved by the attestation clause and the attending circumstances, though, after the expiration of two years, none of the witnesses could testify that he saw the testator sign or heard him acknowledge his signature, nor could testify that he himself read or heard read the attestation clause, which distinctly affirmed the signature and pub-

lication in his presence. Judge DENIO, in this case says : " As to the other particulars, the seeing the signature made by the witnesses, or their hearing it acknowledged, the publication or the declaration by the testator that it is his last will and testament, and his request that they shall sign the will, these do not require or admit of any record or written memorial other than the attestation clause, and must depend upon the declaration of witnesses, and such allowances and inferences on account of want of memory may be made as the justice of the case, common experience and the rules of law present or require."

In *Willis* v. *Mott (*36  *N.*  *Y.,* 486*)*, there were three subscribing witnesses.  One of the three had died. There was the usual attestation clause.  The two living witnesses testified that they did not see the testator sign the will; and one of the witnesses did not know by any inspection of the instrument whether the testator had signed it or not; the testator said he had signed it, and wanted him to witness it; the other witness testified that the testator asked him to witness a will and took the paper from a drawer and said it was his will.  There was no subscription of the will in the presence of either of the two witnesses that testified, or any declaration or acknowledgment in terms that the instrument subscribed was his will.  The witness to the will that was then dead drew the will, and the testator told one of the surviving witnesses that he had signed the will in the presence of the witness that was dead.  The will was sustained, and Judge DAVIES, in delivering the opinion of the court, cites, with approval, *Gage v. Gage* (3 *Curteis,* 451), *Blake v. Knight* (3 *id.* 549), *Ellis v. Smith* (1 *Vesey, jr.*), *Chase v. Kitteridge* (11 *Allen,* 49).  The authorities referred to each hold that it is not necessary that the witness should see the testator sign the instrument,

or that he should acknowledge the subscription in express terms, but that the will should be sustained if the evidence is sufficient to establish the fact that the will was presented to the witnesses already signed, and that the testator has executed it as his will, and that these facts may be shown by proving what occurred at the time.

In *Jackson v. Jackson* (39 *N. Y.* 153), the testator died soon after the will was executed. The court held that the witnesses should sign the will after the subscription, and the court was of the opinion that there was a due execution of the will, but as there was some doubt upon that point, the judgment of the Supreme Court was reversed, to enable the error to be corrected. The rule in regard to what it is necessary to prove for the purpose of showing a due execution of the will is laid down substantially the same as in the other cases before referred to.

The case of *Nixsen v. Nixsen* (2 *Keyes*, 229), decides that the statute only requires on the part of the testator, besides his hand and seal, the publication or announcement of the instrument as his last will and testament. This is all that is required in regard to publication, and Judge DAVIS, in his opinion upon that subject, says: "If a testator should say to the witness, I desire you to attest this instrument as my last will and testament, the language would import, not only a request but a clear publication of the will."

In *Butler v. Benson* (1 *Barb*, 538), the court say, " The will had been published, if at all, about ten years before the hearing. One of the subscribing witnesses has nearly forgotten the whole transaction, and the other is almost as much lost on many important points. Where the witnesses are dead, or from lapse of time do not remember the circumstances attending the attestation,

the law, after the diligent production of all of the evidence then existing, if there are no circumstances of suspicion, presumes the instrument properly executed, particularly where the attestation clause is full ;" citing a large number of cases.

In *Cheeney* v. *Arnold* (18 *Barb.*, 438), CRIPPEN Justice, in delivering the opinion of the court, says : " If the witnesses were all dead, the proof of their hand-writing would be sufficient to establish the due execution of the instrument by the testator. After the lapse of nearly twenty-five years, unless it appears affirmatively that the will was not duly executed, the law will not set it aside or declare it invalid because the attesting witnesses do not recollect that all the requirements were complied with. A different rule would be unjust as well as unreasonable. It cannot be expected that the memory of the witnesses will retain for so great a length of time all the facts and circumstances occurring at the time of its execution. The law requires no such absurdity. "

I think the authorities referred to are decisive of this case. We are simply to declare the law, and have nothing to do with the question of the justice or injustice of the will. The evidence is sufficient to sustain the will upon the question of due execution. Had the witness Hemminway died before the proving of the will, his signature to the attestation clause could have been proved ; and that, with the other evidence, would establish this will so far as his evidence is concerned. What he remembers tends strongly to establish the will, and the other facts essential, we have no doubt transpired; and it is simply a case where the witness, from lapse of time, and not being accustomed to such business, fails to remember what occurred.

Decree accordingly.