NELSON and others, appellants, *vs.* McGIFFERT, respondent.

Where one of the subscribing witnesses to a will swears that all the formalities required by the statute were complied with, on the execution thereof, the will may be admitted to probate ; notwithstanding the other subscribing witnesses may not be able to recollect the fact.

Where the attestation clause of a will states that the will was signed, sealed, and published by the testator, as his last will and testament, in the presence of the attesting witnesses; who, *at his request*, and in his presence, subscribed their names as witnesses thereto, this, after a considerable lapse of time, and when it may reasonably be supposed that the particular circumstances attending the execution of the will have escaped the recollection of the attesting witnesses, is a circumstance from which the court, or a jury, may infer that these requisites of the statute were complied with.

In the execution of wills, the statute does not require any particular form of words to be used by the testator, either in the admission of his signature, in the publication of the instrument as his will, or in the communication to the witnesses of his request or desire that they should subscribe their names to the will as attesting witnesses to the fact of its due execution by him.   It is sufficient if the formalities required by the statute are complied with in substance.

A declaration by a testator, made five years after the execution of a will by him, and when he was about to execute another will, that he had been influenced to make a former will in which he had not done justice to his grandchildren, is not sufficient to authorize the court to reject the probate of the former will, which was duly executed, when the testator was in the possession of his mental faculties, and entirely free from restraint.

Upon the proving of a will, before the surrogate, he has jurisdiction and power to receive proof that such will was revoked by a subsequent will of the testator; and that such subsequent will has been fraudulently destroyed, or that it was destroyed by the testator when his mind had become so far impaired that he was incompetent to perform a testamentary act.

But the chancellor alone has the power to take proof of the will, which was thus destroyed, for the purpose of establishing it as a testamentary disposition of the property of the decedent.

In resisting the probate of an instrument propounded as the last will and testament of a decedent, his heirs and next of kin have the right to introduce any testimony which will be sufficient to satisfy the surrogate that the instrument propounded was not in force, as a valid will, at the death of the testator named therein.

A subsequent will does not revoke a former one, unless it contains a clause of revocation, or is inconsistent with it.   And where it is inconsistent with the former will, in some of its provisions merely, it is only a revocation *pro tanto.*

Where a subsequent will has been made, and there is no evidence that it contained any clause revoking a former will, as in cases where the contents of the last will cannot be ascertained, it is not a revocation of the former will.

.Nelson *v.* McGiffert.

THIS case came before the chancellor upon an appeal from the decision of the circuit judge of the third circuit, made upon an appeal to him from the sentence and decree of the surrogate of the county of Columbia, establishing an instrument propounded as the last will and testament of James Nelson, deceased, as a valid will of the real and personal estate of the decedent. The will was made in July, 1832, when the testator was between seventy and eighty years of age. And it was propounded for probate in October, 1840, a few weeks after the testator's death, by his son-in-law, J. McGiffert, one of the executors named therein, and whose wife was the principal legatee and devisee. The instrument propounded contained an attestation clause, stating the execution and publication of the instrument by the testator, as his last will and testament, in the presence of the subscribing witnesses, who, in the presence of the testator, and at his request, and in the presence of each other, subscribed their names thereto as witnesses. It was attested by three witnesses, all of whom were produced, and examined before the surrogate. Upon their direct examinations all the subscribing witnesses testified to the execution and publication of the will by the testator, and that he was of sound mind, and that all the witnesses attested the instrument in the presence of the testator and at his request. The first witness, M. Hoyt, upon his cross-examination, stated that the testator and McGiffert, his son-in-law, came to the witness, and when the other subscribing witnesses were present, but he could not distinctly recollect whether the testator or McGiffert, the son-in-law, requested him to witness the will, or whether either of them requested the other two gentlemen to do so. This witness, however, had a vague recollection of being asked by McGiffert to witness the will; and there seemed to be a perfect understanding between the testator and McGiffert upon the subject. Voorhees, the next subscribing witness, stated upon his cross-examination, that he could not say positively whether it was the testator or McGiffert who asked him to witness the instrument, or whether it was either of them; but he had an impression that it was McGiffert who called him in. as he w͏a͏s

Nelson *v.* McGiffert.

passing the store of Hoyt, and requested him to be present at the execution of the will. Lyon, the other subscribing witness, said nothing on his cross-examination to weaken the force of his testimony on his direct examination; but he testified that he and the other subscribing witnesses signed their names as witnesses at the request of the testator, and in his presence. The last mentioned witness further stated that after the will had been executed, witnessed, and published, the testator took it and carried it home with him.

The parties opposing the will then introduced evidence for the purpose of showing that the instrument propounded had been revoked by a subsequent will of the testator, made in May, 1837. No such will was found at the death of the testator, or produced before the surrogate; and the counsel for McGiffert insisted that the surrogate had no authority to receive evidence of the making of a subsequent will, which was not produced; for the purpose of showing a revocation of the former will. But the surrogate decided that the testimony was proper. General Bogardus, the attorney who drew the will of 1837, then testified to the due execution of such a will, and that it was witnessed by himself and by another competent witness, whose name he did not recollect, though he was acquainted with him when he witnessed the will; and that all the forms required by the law were complied with. The other subscribing witness to the will of 1837 was also called and examined, and he likewise proved the due execution thereof. Neither of the witnesses, however, stated the provisions of that will, nor whether it contained a clause revoking all former wills. The will of 1837 was enclosed in an envelope by the testator and sealed up; and was placed in a trunk containing deeds and other papers of the testator, and was delivered by him to J. Tait to be kept for him. And in 1838 the trunk containing the will of 1837, and other papers, was delivered to McGiffert, the son-in-law, upon an order signed by the testator, and upon a receipt given by McGiffert to Tait for the trunk and papers thus delivered to him. McGiffert then produced in evidence the receipt of the testator, stating that he had received the trunk

Nelson *v.* McGiffert.

and papers from McGiffert, with the will and codicil, &c. which had been deposited with Tait. That receipt concluded as follows: "The will and codicil above referred to I have this day destroyed; and my intention in so doing is to revive and give effect to my first will, which I made in 1832, and deposited with my son-in-law, Jas. McGiffert, one of the executors therein named. JAS. NELSON."

The surrogate decided in favor of the validity of the will of 1832, and allowed it to be recorded as a valid will of real and personal estate; and the circuit judge affirmed the decision, upon an appeal to him. The parties contesting the will thereupon appealed to the chancellor.

*H. Ketchum,* for the appellants. The writing admitted to proof by the surrogate, as a will, was not sufficiently proved; because the attesting witnesses did not sign their names at the request of the testator. The testator was under undue influence when he executed the will. The writing admitted to proof, was not the last will and testament of the testator, because a subsequent will was made; and there was no legal proof that the last will was destroyed, so as to give effect to the first will. (2 *R. S.* 66, § 53. 2 *Id.* 64, § 54.)

*H. Hogeboom,* for the respondent. The will of 1832 is a legal and valid will, and has been duly proved. The testator's declaration that he had been influenced to make a former will is improper evidence; is indefinite; does not imply restraint, and is overruled by the other testimony. The will of 1836 did not revoke or cancel the will of 1832. All evidence to show the execution of the will of 1836, without producing it or proving its loss, absence or destruction, was premature and improper at any rate until the introduction of the paper of April 23, 1838. (9 *Cowen,* 208. 4 *Id.* 483.) The evidence as to the will of 1836, admitting its absence to be accounted for, was incompetent and improper; because it was not shown to have been in existence at the death of the testator, nor fraudulently destroyed in his lifetime; nor were its provisions proved by two witnesses

Nelson v. McGiffert.

(2 *R. S.* 12, § 74.) It is only in such cases that a will can be proved as a lost or destroyed will, and then only in the court of chancery. (2 *R. S.* 12, § 70.)

The execution of the will of 1836, in the manner required by the revised statutes, was not fully established. (2 *R. S.* 7.) The execution of a second will is not of itself, and necessarily, a revocation of a former one. (3 *Stark. Ev.* 1713. 2 *Phil. Ev.* 195. *Brant* v. *Wilson*, 8 *Cowen*, 56.) There is no evidence that the will of 1836 contained a clause revoking former wills, or that its provisions were inconsistent with those of the will of 1832. (3 *Stark. Ev.* 1712. 1 *R. L.* 365, § 3. 2 *R. S.* 8, § 42. *Id.* §§ 47, 48.) If the will of 1832 was revoked, by the will of 1836, it was subsequently revived and re-established. The destruction of a will is a revocation thereof. The fact of a revocation may rest in parol as well as in writing. (4 *Kent's Com.* 532. 2 *R. S.* 9, § 53.)

THE CHANCELLOR. The execution of the will of July, 1832, was sufficiently proved, to entitle it to be recorded as a valid will of real and personal estate. It is true, the subscribing witnesses, after the lapse of eight years, did not all recollect whether they attested the execution of the will at the request of the testator, or at the request of McGiffert, the son-in-law, who was present at the same time. And one of them had a vague impression that it was McGiffert that requested them to subscribe the will as witnesses. One of the attesting witnesses, however, swore positively that they all attested the execution of the will at the request of the testator, and in his presence. And there was nothing drawn from that witness, on his cross-examination, to induce a belief that he entertained any doubt as to the facts which he swore to, on his direct examination. And where one of the subscribing witnesses to a will swears that all the formalities required by the statute were complied with, the will may be admitted to probate, notwithstanding the other subscribing witnesses may not be able to recollect the fact. (*Jauncey* v. *Thorn*, 2 *Barb. Ch. Rep.* 41.) Again; the attestation clause stated that the will was signed, sealed, and

published by the testator as his last will and testament, in the presence of the attesting witnesses; who, *at his request*, and in his presence, subscribed their names as witnesses thereto. This, after a considerable lapse of time, and when it may reasonably be supposed that the particular circumstances, attending the execution of the will, have escaped the recollection of the attesting witnesses, is a circumstance from which the court or a jury may infer that these requisites of the statute were complied with. In this case, too, all the witnesses testify to facts from which it may fairly be inferred that they attested the execution of the will in conformity to the wishes of the testator. For he went with his son-in-law to the store of one of the subscribing witnesses, with the will already prepared and ready for execution; apparently for the sole purpose of having it executed in the presence of such witness, and in the presence of others who were acquainted with the testator. And there is no pretence that the testator was not perfectly competent to make a valid will, and to understand the nature of the act he was about to perform. Not only the witnesses, but the testator himself, must therefore have understood that they were witnessing the execution of the will, in conformity to his desire and wish; although he may not have said in terms, "I request you and each of you to subscribe your names as witnesses to this my will." If such a formal request was necessary to be proved, in all cases, and the witnesses were required to recollect the fact, so as to be able to swear to it after any considerable lapse of time, not one will in ten would be adjudged to be valid. In the execution of wills the statute does not require any particular form of words to be used, by the testator, either in the admission of his signature, in the publication of the instrument as his will, or in the communication to the witnesses of his request or desire that they should subscribe their names to the will as attesting witnesses to the fact of its due execution by him. But it is sufficient if the formalities required by the statute are complied with in substance.(a)

There is nothing in the testimony in this case which could

(a) See *Seguine* v. *Seguine*, (2 *Barb. Sup. Court Rep.* 385, S. P.)

justify the court in rejecting the will of 1832, upon the ground that the testator had been induced to execute it by fraud or undue influence. The evidence relied on to prove that the will was obtained by undue influence, is the testator's declaration, made about five years afterwards, and when he was about to execute another will, that he had been influenced to make a former will, in which he had not done justice to his grandchildren. Such a declaration is wholly insufficient to authorize the court to reject the probate of a will duly executed, when the testator was in the possession of his mental faculties and entirely free from restraint.

The only remaining questions are as to the due execution of the subsequent will of 1837, and its effect upon the will of 1832. There is no doubt as to the jurisdiction and power of the surrogate to receive proof that the will of 1832 was revoked by a subsequent will of the testator, and that such subsequent will had been fraudulently destroyed ; or that it was destroyed by the testator when his mind had become so impaired that he was incompetent to perform a testamentary act. The chancellor alone had the power to take proof of such a will for the purpose of establishing it as a testamentary disposition of the property of the decedent. But in resisting the probate of the instrument propounded by McGiffert as the last will and testament of the decedent, the heirs and next of kin had the right to introduce any testimony which would be sufficient to satisfy the surrogate that the instrument propounded was not in force as a valid will at the death of the testator named therein.

The evidence of the witnesses on the part of the appellants, in this case, fully established the fact of the due execution of a testamentary paper by the decedent in 1837. But the appellants entirely failed in showing that it was a revocation of the will of July, 1832, or that it was inconsistent with that will, in any respect. Neither of the witnesses says any thing as to the contents of the testamentary paper of 1837 ; or that it contained any clause revoking the will of 1832, or any part thereof. A subsequent will does not revoke a former one, unless it contains a clause of revocation, or is inconsistent with it. And

Nelson v. McGiffert.

where it is inconsistent with the former will in some of its provisions merely, it is only a revocation *pro tanto*. (*Brant* v. *Wilson*, 8 *Cowen's Rep.* 56.) Where a subsequent will is made, and there is no proof that it contained any clause revoking a former will, as in cases where the contents of the last will cannot be ascertained, it is not a revocation of the former will. This was decided by the court of king's bench, in England, more than one hundred and fifty years since, in the case of *Hutchins, lessee of Nosworthy*, v. *Bassett*, (*Comb. Rep.* 90 ; 3 *Mod.* 203, *S. C.*) And that decision was subsequently affirmed, upon a writ of error, in the house of lords. (*See Hungerford and Hill* v. *Nosworthy*, *Show. Cases in Parl.* 146.) In the subsequent case of *Harwood* v. *Goodright*, (*Cowp. Rep.* 87,) which came before the court of king's bench in 1774, it was held that a former will was not revoked by a subsequent one, the contents of which could not be ascertained ; although it was found by a special verdict that the disposition which the testator made of his property, by the last will, was different from that made by the first will, but in what particulars the jurors could not ascertain. This case was also carried to the house of lords upon a writ of error ; and the judgment of the court of king's bench was affirmed. As these two decisions of the court of dernier resort in England were previous to the revolution, they conclusively settle the law on the subject here. It is unnecessary, therefore, to examine the question as to the effect of the written declaration, which McGiffert obtained from the testator, stating that he had destroyed the last will for the purpose of reviving and giving effect to the first ; or as to the capacity of the testator to do a testamentary act at the time when that written declaration was signed by him.

The decision of the circuit judge affirming the decree of the surrogate, must therefore be affirmed, with costs.