THE TRUSTEES OF THE AUBURN THEOLOGICAL SEMINARY and others *vs.* MINERVA CALHOUN.

Where a subscribing witness to the execution of a will testified that she saw the deceased sign his name at the end of the paper; that he said he wanted her to sign her name to a paper, and she did so; but did not hear him say that it was his last will and testament; that she signed it in his presence: *Held* that this testimony did not show that the statute had been complied with; but on the contrary, that the most important requirements were entirely disregarded.

A witness testified that she heard a third person (S.) say, at the time the testator signed the instrument, that it was the testator's last will and testament; whereupon the testator signed it, after saying to the witness " we want you to sign this," or, that he wanted her " to sign her name to a paper," but not calling it his will. That it was doubtful if the testator heard the remark of S. that the paper was the testator's will, owing to deafness. There was no other publication of the will, or request to the witness, than the above. *Held* that this testimony fell very far short of establishing a legal execution of the will.

If all the statute formalities are proved by one of the subscribing witnesses to a will, to have been complied with, the will may be admitted to probate although the other subscribing witness fails to remember that such formalities were observed.

But before this principle can apply, the surrogate must be satisfied that the witness professing to remember that the necessary formalities were observed, is truthful, and is telling the transaction precisely as it happened. If the witness undertakes to swear to the matters which the other witness swears never occurred, it is for the surrogate to say which he will believe.

THIS is an appeal from the decision of the surrogate of the county of Cayuga, rejecting the paper propounded as the last will and testament of Peter Douglass, deceased; and deciding that the same was void, on the sole ground that it was not duly published by the testator.

The deceased was a very aged man, about 85, and quite hard of hearing, and quite feeble; but had at all times superintended all his business. He had a large farm, of over 400 acres, and a good deal of personal property. The respondent was his only child, and she was a widow with five children, and lived with the deceased. The will gives her and her children all his real estate; and gives besides

to each of them legacies; and life annuities to be paid from the income of his personal property. The residue of the personal estate, after the payment of legacies, and setting apart a fund sufficient to meet the life annuities, is given to the appellants, for charitable purposes, specified by the testator in instructions given by him to the appellants, but not specified in the will. It also gives the appellants the fund given to provide for the annuities, whenever the same shall become released from time to time by the death of the annuitants.

The inquiry now is, did the testator take sufficient care to make a legal publication of his will. The only question arises under the third subivision of section 40, (2 *R. S.* 63,) which is: "The testator at the time of making such subscription  *  *  shall declare the instrument so subscribed, to be his last will and testament." The prominent facts proved on this point, are as follows: The testator sent for Starr, one of the witnesses, to draw a new will. The only alterations from a former will he desired to be made, or that were made, related to his charitable bequests. Starr spent the day with him in preparing the will. The devises, legacies and annuities, to his daughter, Mrs. Calhoun, and her children, were copied literally from the former will. After the will was prepared, he desired that Starr and Mary, his servant girl, should be the witnesses, and said to Mrs. Calhoun, "Call Mary to witness this will." When she came in, Starr testifies that Mr. Douglass said to her, "I want you to witness this instrument, or paper, one or the other word,"  *  *  "it is my will." But Mary testifies, that when she came in, she "sat down in a chair by the stand, and Mr. Douglass said, 'we want you to sign this.' That was all I can remember. Mr. Douglass did not call it his will. Mr. Starr did say it was Mr. Douglass' will." This last declaration is repeated several times. She says: "I heard Mr. Starr say, at the time Mr. Douglass signed the instrument, that it was Mr.

Trustees of Auburn Theological Seminary *v.* Calhoun.

Douglass' last will and testament. He referred me to the margin with red ink notes, and then turned over the pages and said it was Mr. Douglass' last will and testament. Then Mr. Douglass signed it. There was a separate paper concerning Sarah. Mr. Starr said sign that. Mr. Douglass said, I will sign in both places." Again, Mary says: "I can't say as Mr. Starr read the attestation clause to me or not," and further, "I think Mr. Starr took up the instrument and read something to me before I signed it. I can't say what it was."

*Jno. Porter,* for the appellants.

I. The statute in respect to the publication is satisfied, if the proof shows clearly that the testator knew the nature of the instrument he excuted; and that the witnesses are informed at the time, that it is will, either by himself, or by any one acting for him and in his presence. (*Brinckerhoof* v. *Remsen,* 8 *Paige,* 488, 499. *S. C. on error,* 26 *Wend.* 325. *Doe* v. *Roe,* 2 *Barb.* 203.) In this last case the court says, "the object of the legislature in prescribing this requisite to the due execution of a will, was obviously to secure the evidence that the testator knew the nature of the instrument he executed. Hence, it is said by Chief Justice Nelson, in commenting on this requirement of the statute, (26 *Wend.* 332,) that the legislature only meant there should be some communication to the witness, indicating that the testator intended to give effect to the paper as a will. Any communication of this idea, or to this effect, will meet the object of the statute." Senator Verplanck says: "The declaration may be made in any manner, either by words or by acts, in writing or by signs. The object is to guard against fraud, by requiring evidence of a present intention of the testator to execute and give effect to the instrument as a will, and nothing else." (*Seguine* v. *Seguine,* 2 *Barb.* 385. *Torry* v. *Bowen,* 15 *id.* 304.) In this last case the court says: "If enough was

done to inform the witnesses substantially, that is sufficient where it is apparent that the testator himself acted understandingly. Nor is it necessary that the testator should make every declaration, or do every act himself. If others speak and act for him, in his presence and with his assent, in such a manner that the court can see that the testator sanctioned or adopted such acts, that is enough, provided they come up fully to the requisitions of the statute." (*Nipper* v. *Groesbeck*, 22 *Barb.* 671.) The same doctrine is repeated in *Coffin* v. *Coffin*, (23 *N. Y.* 9.)

II. If it appears, plainly, that the testator understood the nature of the instrument that he was executing, and that he intended to recognize and treat it as his will, and that the witnesses so understood it, and if the attestation clause is read in the presence of the testator and the witnesses, it will amount to a compliance with the statute in respect to a publication. (*Brinckerhoof* v. *Remsen*, 26 *Wend.* 325, *opinions of Ch. J. Nelson and Senator Verplanck. S. C.*, 8 *Paige*, 499. *Torry* v. *Bowen*, 15 *Barb.* 308.)

III. That the testator was very hard of hearing is admitted, but that he held conversation with those who visited him and transacted business with him, is not disputed. And the evidence is positive and not contradicted, that when Starr spoke to Mary, and said it was Mr. Douglass' last will and testament, the testator heard it. Nor is this testimony any where contradicted. Mary says that she don't think Mr. Douglass heard all Mr. Starr said at the time.

*Cox & Avery*, for the respondent.

I. The circumstances attending the pretended execution of this will, are such as to call for careful scrutiny, and a strict and substantial compliance with all the forms of the statute. 1. The age and infirmity of the deceased; his loneliness; the grasping disposition and strong self interest of Starr; his opportunity; his agency; his purpose,

and his monopoly of evidence, suggest the strongest presumptions of undue influence, if not of fraud. (1 *Jarman*, 44, 45, *and note*, 2 *Am. ed. Barry* v. *Butlin*, 1 *Curteis*, 637. *Durling* v. *Loveland*, 2 *id.* 225. *Dayton's Surrog.* 50, *and cases cited under note i. Clark* v. *Fisher*, 1 *Paige*, 176. *Seymour* v. *Van Wyck*, 2 *Seld.* 120.) 2. This will was drawn by Starr; and there is no proof either of previous instruction, or that it was even read over to the testator. (1 *Jarman*, 42, *and cases. Dodge* v. *Meech*, 1 .*Hagg.* 384, 612. *Harrison* v. *Rowan*, 3 *Wash. C. C.* 588.) 3. The witness Starr appeared to Mr. Douglass in the character of a minister of religion; his true character, as procurer for these corporations, was not divulged. 4. Sufficient capacity to make a will is admitted. But it becomes important correctly to estimate the true condition of the old man, in order to consider, appropriately, the influences which these gentlemen brought to bear upon him. 5. The extraordinary gift of $20,000 at the making of the will, as well as its provisions, giving to these corporations about two-thirds of his whole estate; giving to his only child, (the widow, Mrs. Calhoun, and her five children,) a small stipend for life, in addition to the farm, show a disposition of his property widely at variance from the usual dictates of natural affection. Sufficient appears from the testimony of Starr to show, that the written will is one thing, and the actual intent of the testator quite another. There were five objects in the will made on Thursday, (the same as in the will drawn by Mr. Cox,) two of them are given; the Sunday School, and American Protestant Society. The testator obviously was made to believe that the bequest to the Presbyterian house would go to the benefit of these objects. The real gifts, or its ultimate beneficiaries were to be interpreted and directed by one nuncupative witness—Starr; and he evidently made the old man believe it would be all right—swore he would make it right. By the will, the residuary bequest is to be added

to the "Douglass fund" established in his lifetime; but there was no such fund; the pretended gift was to be his for his lifetime. Whereas it is quite obvious that there is no trust whatever connected with the residuary bequests for the benefit of these societies, the five objects are avoided, and the testator deceived and deluded. Besides this, the attempted devise to Mrs. Calhoun and her children may fail. By the 3d section of the will, they have, in common, an estate determinable when the youngest child would be of age, if living. After that, and until the death of Mrs. Calhoun, the estate vests in no one, as the grant over to the children, by the 5th and subsequent sections, does not take effect till the decease of Mrs. Calhoun—during which period there is no disposition of the use and income of this real estate. Perhaps it would enure to the benefit of the residuary fund, but whether it would or not, it seems clear that such was not the intention of the testator, and affords additional evidence that the will is the product of the controlling mind of Starr, who had in view but a single object, to wit, the pecuniary interest of his principals and himself.

II. The essential requisites to the due execution of a will are four, viz: 1st. Signing at the end, (or acknowledgment.) 2d. In the presence of two witnesses. 3d. Declaration by testator. 4th. In the presence of two witnesses. (2 *R. S.* 246, § 33, 4th ed. *Dayton's Surrog.* 92, 96. *Remsen* v. *Brinckerhoof,* 26 *Wend.* 331. *Brown* v. *Silliman,* 16 *Barb.* 211. *Brown* v. *DeSelding,* 4 *Sandf.* 14. *Burritt* v. *Silliman,* 16 *Barb.* 211.) 1. The substantial omission, or inability to prove either of these, leaves the alleged last will unproved. (*Same authorities, Remsen* v. *Brinckerhoof,* 26 *Wend.* 331. 1 *id.* 406. 19 *John.* 386. 5 *Cowen,* 221. 1 *Denio,* 33.) This last case was an action at law; in which cases it has always been held sufficient to prove the execution by one witness. (*Lewis* v. *Lewis,* 13 *Barb.* 24. *Same case,* 1 *Kern.* 227. *Seymour* v. *Van*

*Wyck*, 2 *Seld.* 120.)    2. Conceding that the statute is satisfied by a substantial compliance, and that no mere form is required, it must be admitted that in the case before us there is no satisfactory proof even of a substantial compliance. "Any communication of the testator to the witnesses, whereby he makes known to them that he intends the instrument to take effect as his will, will satisfy the requirement." (*Coffin*. v. *Coffin*, 23 *N. Y.* 15.) And yet this communication must be distinct and unequivocal. As says the court in *Lewis* v. *Lewis*, (1 *Kern.* 226 :) "To satisfy the statute, the testator must, in some manner, communicate to the attesting witnesses the information that the instrument then present is of a testamentary character, and that he then recognizes it as his will, and intends to give it effect as such. It must be declared to be his last will and testament, by some assertion, or some clear assent, in words or signs; and the declaration must be unequivocal." "The policy and object of the statute requires this, and nothing short of this will prevent the mischief and fraud which were designed to be reached by it." After stating that it will not suffice that the witnesses learn from other sources, &c., or that they infer from the circumstances and occasion that the instrument is a will, the opinion proceeds : "The fact must, in some manner, although no particular form of words is required, be declared by the testator in their presence, that they may not only know the fact, but that they may know it from him, and that he understands it, and designs to give it effect as his will," &c. (*Lewis* v. *Lewis*, 1 *Kern.* 227. *Wilson* v. *Hetterick*, 2 *Bradf.* 430.) 3. Tested by these principles, let us look at the proof in this case. The witness Starr, who drew the will, testifies to a long, connected and special address by the testator to Mary—abundantly satisfying the statute, if true. But Mary swears that nothing of this kind took place. She says repeatedly, that Mr. Starr told her it was Mr. Douglass' will; but that "I did

not know the paper I signed was a will, from anything Mr. Douglass said." 4. That Mr. D. did make any such speech to Mary is, of itself, extremely unlikely and improbable. 5. But if both are to be regarded as equally credible, unbiased and disinterested, then each neutralizes the other as to the essential fact of publication. 6. Nor can these inconsistencies be attributed to a failure of memory. The transaction was but a few months before, and the recollection is fresh and distinct. (*Wilson* v. *Hetterick*, 2 *Bradf.* 430.) The testimony is entirely irreconcilable. But as it will be claimed that the declaration and publication by Starr in the presence of the testator were sufficient to satisfy the statute, we answer,

III. The doctrine of imputation, or publication by proxy, is both dangerous and of doubtful authority. 1. As we have shown, (under point II,) the statute demands that the act, sign, nod or wink constituting publication, shall be the act of the testator himself, and nobody else, * * "the testator shall declare it to be his last will and testament." 2. In Rutherford's case, (1 *Denio*, 33,) the question came up at circuit, and not on probate; and the decision did not pretend to establish the law of adoption, or imputation. In Chaffee's case, (10 *Paige*, 85,) it was held that an acknowledgment of the signature was not to be implied or imputed from a due publication. In *Ex parte Beers*, (2 *Bradf.* 163;) which was a good case for the application of the doctrine of imputation and application, the testator pointed with his pen to the attesting clause, requesting them to sign, and add their residences. One witness remarked: "It is a poor look for me, as a witness to a will don't receive anything," and the testator smiled, but said nothing. The court rejected the will; remarking, that although the witnesses knew it was a will, and the conjecture was clothed in the form of words by one of them, yet, as it was neither admitted nor denied by the chief actor, the will was rejected. This in 1852. 3. In

*Torrey* v. *Bowen*, (15 *Barb.* 304,) the doctrine was applied, and perhaps very well for that case. But if it is to be regarded as establishing the doctrine of dispensing with the act of publication by the testator, it then dispenses with the statute, and is unsound; for the statute does not authorize the act of the proxy in the presence of the principal; nor does it authorize *intention* in place of *action.* This was in 1853. 4. If such doctrine be sound, why cannot the whole thing, drawing, signing, publication and acknowledgment, be done by some one else; the testator sitting or lying by, in silence, perhaps oblivious, stupified, dosing or drunk, or helpless from sickness, old age or imbecility? 5. Compare the principle involved with the doctrine of *Lewis* v. *Lewis*, (1 *Kern.* 227, *decided in* 1854.) "The fact must be declared by the testator in their presence, that they may not only know the fact, but that they may know it from him, and that he understands it," &c. (*See also* 2 *Bradf.* 163; *Id.* 431.) Again; Verplanck, Senator, (26 *Wend.* 337:) "How, then, can this positive requirement be satisfied, except by the testator personally making the fact of his own understanding and intention known to the witnesses, at the time, by such express words or signs as could leave no doubt in their minds?" 6. The argument of Justice Johnson (15 *Barb.* 308) would sustain an autographic will, as in 2 *Bradf.* 431, without any pretense of publication; for the evidence of intention would be clear. But it is enough to say that the statute demands more.

IV. But if the doctrine of proxy and adoption be sound in its application to some cases, it is at best dangerous as a principle, and can have no application to the case before us. 1. For how is it to be applied to a man who could not hear a word of ordinary conversation? (*See the testimony of Dr. Coon.*) "He could not hear me without getting close to his ear, within a foot, and speaking loud." Said "that he could talk to me, but could not hear a word

I said." (*See the testimony of Faate, Compston and De Witt.*)
2. On the other hand, these gentlemen, professors and
trustees of the seminary, who went to see him, had no
acquaintance with him, and could only guess whether he
heard them or not. They did not know the degree of his
deafness, and did pretty much all the talking at him.
But no disinterested witness undertakes to have him hear,
except Starr. 3. Now, if Starr read over the whole of the
attesting clause to Mary, in the presence of the old man,
can it be presumed that he heeded it; or if that be pre-
sumed, can it be further presumed that he heard; and if
that also be presumed, can it be further presumed that he
understood it and assented? (To a very deaf person, even
when trying to listen, the effect of ordinary reading is but a
low monotonous hum.)

V. The evidence of what occurred at the pretended ex-
ecution of this will, is now all before the court. The
trial lasted from October 11th through several adjourned
sittings, until November 15th, and was exhaustive of the
evidence in support of the will. There is no probability
of any honest evidence of publication being added on a
re-trial, for no one besides Starr and Mary were present,
and certainly Starr must be exhausted.

VI. There being no error of law in the decision of the
surrogate, and his conclusions of fact being abundantly
sustained by the evidence, and there being no prospect of
any further evidence in support of this will, the decision
of the surrogate rejecting the same should be affirmed,
with costs against the appellants.


*By the Court,* MULLIN, J. To authorize a surrogate to
admit a last will to probate, it must be executed and
attested in the following manner: 1st. Subscribed by the
testator at the end of the will. 2d. Such a subscription
shall be made in presence of each of the attesting witnesses,
or shall be acknowledged to have been so made to each

of the witnesses. 3d. When the testator subscribes the will, or makes the acknowledgment, he shall declare the instrument so subscribed to be his last will and testament. 4th. There shall be two witnesses, who shall sign at the end of the will, at the request of the testator. (3 *R. S.* 144, § 35, *5th ed.*)

In *Coffin* v. *Coffin*, (23 *N. Y.* 15,) it is said that the declaration that the instrument is the testator's last will and testament need not be made in any particular form. Any communication of the testator to the witnesses whereby he makes known to them that he intends the instrument to take effect as his will, will satisfy the requirement. In that case both witnesses were present, and one of them asked the testator if he wished him to sign or witness the will, and the testator answered in the affirmative. This was held a good publication. The judge delivering the opinion says : " There can be no doubt that such a declaration can be made in answer to a question, or even by a sign. It is only required that it be understandingly made."

In *Lewis* v. *Lewis*, (1 *Kern.* 226,) Allen, J., says : " To satisfy the statute, the testator must in some manner communicate to the attesting witnesses, at the time they are called to sign as witnesses, the information that the instrument then present is of a testamentary character, and that he then recognizes it as his last will and testament by some assertion or clear assent in words or signs ; and the declaration must be unequivocal. The policy and object of the statute require this, and nothing short of this will prevent the mischief and fraud which were designed to be reached by it. It will not suffice that the witnesses have elsewhere, and from other sources, learned that the document which they are called to attest is a will, or that they suspect or infer from the circumstances and occasion that such is the character of the paper. The fact must, in some manner, although no particular form of words is required, be declared by the testator in their presence, that they may

not only know the fact, but that they may know it from him, and that he understands it, and, at the time of its execution, which includes publication, designs to give effect to it as his will; and to this, among other things, they are required by statute to attest."

Keeping in mind this construction of the clauses in question, let us proceed to examine the evidence given before the surrogate, in order to see whether it comes up to the standard established by the courts. Mary Fitzgibbon was one of the witnesses, and subscribed her name at the end of the will, as required by the statute. The certificate signed by her is in the usual form, but it is not of itself evidence to prove the due execution of the will. She was therefore called before the surrrogate, her examination under oath reduced to writing, and in that examination she testifies that she saw the deceased sign his name at the end of the paper. He said he wanted her to sign her name to a paper. She did so. Did not hear him say that it was his last will and testament. She signed it in his presence. It cannot be seriously claimed that upon the evidence thus given the statute has been complied with. On the contrary, the most important requirements are entirely disregarded. If we go to her oral evidence, taken on a more full and careful direct and cross-examination by counsel, the case is not changed. She says: "I heard Starr say at the time Mr. Douglass signed the instrument, that it was Mr. Douglass' last will and testament; he referred me to the margin, with red ink notes, and then turned over the pages and said it was Mr. Douglass' last will and testament; then Douglass signed it; there was a separate paper concerning Sarah; Starr said sign that; Douglass said, I will sign in both places; think he signed the one concerning Sarah first; I sat down in the chair by the stand, and Douglass said, we want you to sign this; Mr. Douglass did not call it his will; Starr said it was Mr. Douglass' will; Douglass did

Trustees of Auburn Theological Seminary v. Calhoun.

not say to me, I want you to witness this instrument; he did not tell me what it was; Douglass signed it, and then put his finger on the seal." On her cross-examination she says she " supposed it was a will, because Starr told her so, and because Huggins had been there a few days before, making a will; all Douglass said was, we want you to sign this; Douglass was very hard of hearing." She also testified that she had been in Douglass' employ for some time, and she did not think, judging from her experience with him, that Douglass heard all Starr said when he spoke to her about signing the will, and that it was Douglass' last will. She testifies to other matters, but the foregoing is the substance of her evidence on the subject of the execution of the will, and I repeat, it fell very far short of establishing a legal execution of it. Not one word is spoken by Douglass, except to say that he wanted her to sign this, and she thinks he may have said, pointing to the seal, that it was his. Starr said it was Douglass' will, in his presence, but there was no word or sign of assent, or any indication that he understood what was said. This would be enough to prevent probate ; but superadded to this is evidence of great deafness, and the opinion of the witness, founded on her acquaintance with him, that he did not hear what Starr said.

But on the failure of one witness to remember that all the statute formalities were complied with, if they are proved to have been complied with, by the other, the will will be admitted to probate. (Nelson v. McGiffert, 3 Barb. Ch. 158.) Starr, the other witness, testifies with the greatest minuteness to the doing of all the statute requires to be done, in order to constitute a valid execution and publication of a will; and within the case of Nelson v. McGiffert due publication was established. But before the principle can apply, the surrogate must be satisfied that the witness is truthful; that he is telling the transaction precisely as it occurred. If the witness undertakes to swear to the

matters which the other witness swears never occurred, it is for the surrogate to say which he will believe. The difficulty in this case is, not that the witness Mary Fitzgibbon has forgotten what occurred, but it is that she recollects that the essential things required by the statute were not said or done.

I think the surrogate was right in holding that he could not, on this evidence, admit the will to probate. He was personally interested in the fund willed to the corporation, and he had most unfairly withheld all information on that subject, when he could not have forgotten that he was entitled to demand five per cent of the money given through his agency to the corporation of which he was agent. Add to this his own statement of his intercourse with the testator; the influences brought to bear upon him to obtain money for their corporation; his bodily infirmities; his great age; the opportunity afforded to practice on his religious or benevolent feelings; the manner in which, and the steps by which, a gift and bequest obviously greatly beyond what the testator originally intended to give to such purpose, all conspire to convince me that the will ought not to be admitted to probate on the evidence furnished to the surrogate.

It is quite clear that the surrogate means to rest his decision on his want of confidence in the evidence of Starr, and his belief that the witness Mary has honestly stated what transpired on the occasion of the execution of the will. On this ground, I think he was right, and that his decree should be affirmed, with costs.

BACON, J., dissented.

Decree affirmed.

[OSWEGO GENERAL TERM, July 8, 1862. *Mullin, Morgan* and *Bacon,* Justices.]