EPENETUS A. WILLIS, APPELLANT, *v.* SILAS MOTT, EXECUTOR, &c., OF SAMUEL MOTT, DECEASED, RESPONDENT.

*Will—Subscribing Witness, weight of Evidence when dead—Acknowledgment what.—2 R. S. 63.*

Where a subscribing witness to a will is deceased, and his signature thereto is proved, such evidence becomes strong or weak, according to the character of the deceased witness. If he was an uneducated man, not accustomed to subscribing wills, and ignorant of the legal requisites to their due execution, mere proof of the handwriting of such a witness would furnish but slight evidence of strict compliance with the requirements of the statute.   But if such witness was accustomed to drawing and attesting wills, it would be otherwise. The statute does not require the testator to exhibit his subscription to the witness at the time he acknowledges his execution of the will.   The statement that the testator had signed the paper in the presence of the witness, who had already attested it, accompanied by an exhibition of the paper and the declaration that it was his will, and the request to the witness to sign the attestation clause, is a sufficient evidence of an acknowledgment.

*B. D. Silliman* for Appellant.

*J. H. Anthon* for Respondent.

DAVIES, CH.J.—The surrogate of the county of Queens admitted to probate the will of Samuel Mott, deceased, and on appeal his judgment was affirmed by the General Term of the Supreme Court.   The contestant now appeals to this Court.

The following facts were established by the evidence before the surrogate:

1. That the instrument admitted to probate as the last will and testament of Samuel Mott, deceased, was written upon one sheet of paper, and was subscribed by him at the end thereof.

2. That the names of the three persons appearing as attesting witnesses at the end of the attestation clause were signed by them respectively, but on different days, and not in the presence of each other.

3. That the deceased declared the instrument to be his last will and testament to and in the presence of Adam Mott and

Joseph O. Hegeman, two of the attesting witnesses, and that they each, at his request, and in his presence, signed his name to said attestation clause as a witness. Andrew J. Hegeman, the other subscribing witness, was dead at the time the will was offered for probate. He wrote the will, and his name appears as the first attesting witness. The attestative clause was in these words: " The foregoing instrument, consisting of one sheet of paper, was, at the date thereof, declared to us by the testator, Samuel Mott, to be his last will and testament, and he then acknowledged to each of us that he subscribed the same, and we, at his request, sign our names hereto as attesting witnesses."

(Signed)                      ANDREW J. HEGEMAN,
                                ADAM MOTT,
                                JOSEPH O. HEGEMAN.

All residing in Manhassett.

The provisions of the Revised Statutes require that every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:

1. It shall be subscribed by the testator at the end of the will.

2. Such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator (2 R. S., § 40, p. 63).

All these requirements of the statute would appear, on the face of the instrument produced, to have been complied with. The attestative clause, to which each of the three witnesses affixed his name, contains all that the statute demands.

It appeared in evidence before the surrogate that Andrew J. Hegeman, the first witness whose name was signed to the attestation clause, was dead, and had died before the testator. His handwriting, as also that of the testator, was proved, and that

the signature of the testator to the will, and that of Andrew J. Hegeman to the attestation clause, were their respective genuine signatures. It also appeared that the will was in the handwriting of Andrew J. Hegeman.

The Revised Statutes declare that when any one or more of the subscribing witnesses to a will shall be examined, and the other witnesses are dead, or reside out of the State, or are insane, then such proof shall be taken of the handwriting of the testator, and that of the witness or witnesses so dead, absent, or insane, and of such other circumstances as would be sufficient to prove such will on a trial at law. This Court, in Orser v. Orser (24 N. Y. R. 51), had occasion to pass upon this provision of the statutes, and we then said : " The effect of this provision, of course, is to make the certificate of attestation, signed by the deceased witness, evidence to some extent of the facts stated in it. The force of this evidence will depend very much upon the circumstances of the case. If the witness whose signature is thus proved is shown to have been an uneducated man, not accustomed to subscribe wills, and ignorant of the legal requisites to their due execution, the evidence offered by proof of his handwriting, of a strict compliance with the requirements of the statutes, would be very slight. On the contrary, if the witness was in the habit of drawing and attending to the execution of wills, and familiar with the law upon the subject, his certificate that the requisite formalities were duly observed would be entitled to great weight. The evidence which such a certificate would afford would, in most cases, be sufficient to overcome the mere want of recollection of a living witness; and should the testimony of the latter amount to a positive denial, the relative weight of the conflicting proof would then depend upon the apparent integrity and intelligence of the witness and the circumstances surrounding the particular case." And this Court held that the judge properly charged the jury that they might find the due execution of the will, in that case, against the positive testimony of the living, attesting witness, if they believed the certificate of attestation true, provided " there were facts and circumstances disclosed to warrant that belief."

The surviving witnesses, Adam Mott and Joseph O. Hegeman, were examined, and each states that the testator did not subscribe his name in his presence, and that the name of Andrew J. Hegeman was subscribed as a witness, when they respectively signed the attestation clause. Adam Mott, after swearing that the signature of the will was that of the testator, in reply to a question whether it was there before, or put there after he signed as a witness, testified, " It was there before, I suppose; the paper was so folded that when I signed it I did not see the name, Samuel Mott; Mr. Mott handed it to me, and said it was his will, that it had been drawn by Andrew J. Hegeman, and that *he, the testator, had signed it* in Mr. Hegeman's presence, and that he wanted me to witness it. I did so; I signed my name in the presence of the testator." He further testified that he knew the handwriting of Andrew J. Hegeman, and that his signature to the will was his; that Andrew J. Hegeman's name was there when he signed it. Joseph O. Hegeman testified that he was sent for to go to the house of the testator; that when he arrived there, the testator asked him if he was willing to witness a will; that he then got this paper (the will) out of the drawer; " he laid it on the table before me, got pen and ink for me, and said this was his will; so I took the pen and wrote my name and place of residence; *the name, Samuel Mott, was signed there* before I signed it; it was there before I saw the paper; no one was there in the room except Samuel Mott and myself;" that he knew the signature of his brother, Andrew J. Hegeman; had frequently seen him write; knew his handwriting; that the signature as witness to that paper was the handwriting and signature of his brother, Andrew J. Hegeman, and that the will was also in his handwriting.

It is thus placed beyond all reasonable doubt that, at the time the testator requested Mott to sign the will produced to the witness, the testator himself had signed it. Andrew J. Hegeman had signed the attestation clause, certifying that the testator had declared to him that the same was his last will and testament; that he had acknowledged to him that he, the testator, had subscribed the same, and that, at his request, he had signed his

name as a witness thereto. This is certainly primâ facie evidence that, at the time Andrew J. Hegeman subscribed his name to the attestation clause, the will had been signed by the testator. The surrogate was, therefore, authorized to find that fact if he believed the certificate to be true, provided there were facts and circumstances disclosed to warrant that belief. It must be conceded that all those developed before the surrogate thoroughly tend to corroborate the truth of the matters stated in the certificate. We then start with the ascertained fact that, at the time Mott signed his name as a witness, the will had been executed by the testator. He declared it to be his last will and testament, and that he had signed it in Andrew J. Hegeman's presence, and wished the witness to become an attesting witness to its execution, which he did, in the presence of the testator.

If we assume, as, I think, already we may, that the will was signed by the testator at the time he requested Mott to witness the will, then it follows that all the requirements of the statute have been complied with. The proof as to Joseph O. Hegeman is complete. The statute does not imperatively require that the subscription of the testator shall be made in the presence of each attesting witness. It is sufficient if the testator shall acknowledge such subscription by him to have been so made to each witness. Did he acknowledge to Mott that such subscription had been so made by him ? The statute does not prescribe any form in which this acknowledgment is to be made. The paper was produced bearing the signature of Andrew J. Hegeman to the attesting clause, and the testator declared it to be his will ; that it had been drawn by Hegeman, and that he, the testator, had signed it in Hegeman's presence, and requested Mott to sign it also as a witness. I am at a loss to conceive how he could in more unequivocal terms have acknowledged his subscription to the will. He declared to Mott that he had signed it in Hegeman's presence, and requested Mott to witness it. Witness what ? Undeniably its execution ; but this was an idle ceremony, if, in fact, it had not been executed by the testator. His acts and declarations can raise no other just construction than an acknowledgment, or confession,

or statement that the paper writing produced to the witness had been subscribed by him. The statute does not require that the testator shall exhibit his subscription to the will at the time he makes the acknowledgment. It would, therefore, follow that when the subscription is acknowledged to an attesting witness, it is not essential that the signature be exhibited to the witness. The statement, as in this case, that the testator had signed the paper in the presence of the witness who had already attested it, accompanied by an exhibition of the paper, and the declaration that it was his will, and the request to the witness to sign the attestation clause, is an acknowledgment of the testator's subscription within the meaning and intent of the statute. No question can be properly made that the acknowledgment of the subscription of the testator to Joseph O. Hegeman was not a compliance with the requirements of the statute. He testified that the testator took this paper (the will) out of the drawer; "he laid it on the table before me, got pen and ink for me, and said this was his will; the name of Samuel Mott was signed there before I signed it; it was there before I saw the paper; Samuel Mott, the testator, said he had signed the paper himself, that his name was on it."

Here we have the distinct declaration of the testator to the witnesses, Mott and Joseph O. Hegeman, that he had signed the paper he produced and requested them to witness, and in addition his declaration that it was his will. If these declarations of the testator, of the fact of his subscription, are not an acknowledgment that such subscription had been made, it is difficult to see what language would have been more appropriate to that end. Lexicographers define the word "acknowledge" to mean, "to admit to be true, to declare openly, to avow, to admit, to testify to the genuineness of, to own the validity of." What more emphatic or comprehensive language could this testator have used to declare the genuineness of his signature, to acknowledge that he had executed the paper, than by saying, as he did, that he had signed it in the presence of the witness, who had then attested his signature; that he had signed the paper himself; that his name was on it.

The surrogate, with all the benefits of a personal examination of the witnesses, became satisfied that this instrument, though not subscribed by the testator in the presence of the attesting witnesses, yet that such subscription was acknowledged by him to each witness to have been so made ; and unless the evidence was very clear and satisfactory to the contrary, we ought not to disturb his adjudication upon this question of fact.   On the contrary, we concur in the opinion of the Supreme Court, affirming his judgment, that the evidence and all the facts and circumstances developed on the hearing amply justified the conclusion at which he arrived.

This case is unlike, in its essential facts, to that of Lewis *v.* Lewis (1 Kern. 220).   There the instrument was not subscribed by the decedent in the presence of the witnesses ; there, when the witnesses were called in, the paper was so folded that the witnesses did not see the subscription, and the only declaration or acknowledgment of the party was in substance, " I declare the within to be my free will and deed."   The surrogate, upon this evidence, refused to admit the will to probate, because he was satisfied that the instrument was not subscribed in the presence of the witnesses, and that the subscription was not acknowledged to them by the alleged testator.   The Supreme Court affirmed the decree of the surrogate, and this Court affirmed the judgment.   This Court very properly said in that case, " The statute is explicit, and will not be satisfied with anything short of a substantial compliance with its terms."

In Chaffee *v.* The Baptist Missionary Society (10 Paige, 85), the testatrix, who had subscribed the will by making her mark, but not in the presence of the attesting witnesses, afterwards, and in their presence, placed her finger on her name and said, " I acknowledge this to be my last will and testament."   It was held that the will was not duly executed ; that the statute contemplates the subscription or the acknowledgment thereof in the presence of the witnesses, and the publication of the instrument as a will, are two distinct acts, and both are necessary to its due execution : and the statute being clear and explicit in terms, courts are not authorized to vary it by construction, or to make

one act stand for both. Upon this branch of the statute it is the subscription, not the will, which is to be acknowledged. It cannot be doubted that if, in that case, the testatrix, in addition to the publication, had declared that she had signed that paper thus declared to be her will, and that her name was on it, that such declaration would have been held an acknowledgment of her subscription to the will.

No question is made in the case at bar that the evidence of publication was not ample and satisfactory.

The case of Ilott v. Genge (3 Curteis, 160; S. C. 4 Moore's Privy Council Cases, 266) is relied upon by the Appellant's counsel, and in its circumstances is very like the case of Lewis v. Lewis (supra). There the deceased requested two persons "to sign a paper for him," which they did, in his presence. The paper was so folded that they did not see any writing whatever on it, and no explanation of the nature of the instrument was made to them. It was held by the Prerogative Court, and by the Privy Council, in affirmance of the decree of that Court, that there was no acknowledgment, express or implied, of the signature, in the presence of the witnesses; that a signature neither seen, identified, nor in any manner referred to, as a separate and distinct thing, cannot, in any just sense, be said to be acknowledged by a reference to the entire instrument by name, to which the signature may or may not be at the time subscribed; that the will was not subscribed in the presence of the witnesses, neither was the subscription acknowledged by the testator; and the execution in this respect was defective.

The law applicable to this subject was reviewed in this Court in the case of Peck v. Cary (27 N. Y. 9). It was there said that it is very true that the proponent holds the affirmative in showing that the prescriptions of the statutes were complied with, but this may be inferred from circumstances without any direct testimony, or by the evidence of one witness against that of one or more of the others. Reference was made, as illustrating this rule, to the case of the will of Eliza Ware (25 N. Y. 425, note), where this Court held a will entitled to probate where one of the two wit-

nesses positively denied the existence of the two required facts; and cases are referred to in the opinion where wills have been established contrary to the testimony of all the witnesses (Trustees of the Auburn Theological Seminary v. Calhoun, 25 N. Y. R. 422; Orser v. Orser, ubi supra). The British statute of Wills of 1 Vic., passed in 1837, substantially like our Revised Statutes, declares that every will shall be signed at the end or foot thereof by the testator, or by some other person in his presence, and by his direction, and that "such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the time, and such witnesses shall attest and shall subscribe the will in the presence of the testator" (2 Jarm. on Wills, App. 778). The obligation to sign in the presence of the witnesses, or to acknowledge the signature before them, is equally stringent as in our Revised Statutes. The cases in the Ecclesiastical Courts, upon this statute, are instructive and are very strong, as bearing on the case at bar. I take them from the learned opinion of Chief Judge Denio, in Peck v. Cary (supra). In the case of Mary Warden (2 Curteis, 334), the testatrix had signed the will before the witnesses came into the room. They came in consequence of being sent for by her. The person who had drawn the will produced it, and told the testatrix that the witnesses had come, to which she replied, "I am very glad of it, thank God!" whereupon the witnesses signed their names, in the presence of the deceased. The Court were of the opinion that, under the circumstances, the signature was sufficiently acknowledged by the testatrix under the act of Parliament of 1837. In Gove v. Gawen (3 Curt. 151) the will purported to have been executed in the presence of two witnesses. One of them swore to a perfect execution soon after it took place; but the other, who was examined two and a half years afterward, positively denied that the testator signed it in his presence, and there was no attempt to prove an acknowledgment of the signature. Probate was decreed. Among other things, Sir H. Jenner Fust said: "It must be evident that it was a matter of most serious consideration, if the rights of parties are to depend on the recollection

of witnesses at any distant period of time." The same learned judge determined the case of Gaze v. Gaze (id. 451). The deceased produced the will to the witnesses, already signed and sealed, and either pointed out the places where they should sign, or said, "Put your names below mine." They signed accordingly. This was held a sufficient acknowledgment of his signature, the judge re-marking, "I think it would be a hypercriticism to say there has not been a sufficient compliance with the words of the act." In another case, Blake v. Knight (id. 547), there were three witnesses who had signed the attestation clause. Two of them swore that the testator did not sign or acknowledge the sig-nature in their presence, and the other could not say whether he did or not; but the deceased had been a lawyer, the witnesses were all present and signed together, and there were circum-stances rendering a due execution highly probable. The will was pronounced valid. The principle considered established by the reporter was this: "Positive affirmative evidence, by the sub-scribed witnesses, of the fact of signing or acknowledging the sig-nature of a testator in their presence, is not absolutely essential to the validity of a will. The Court may presume due execution by a testator upon the circumstances." In Cooper v. Bockett (id. 648) the witnesses swore that the testator had not signed when they subscribed the will, but did so afterward. It was con-sidered that this would not be a good execution if the facts were so; but it was thought the witnesses had mistaken the order of signing, and the will was established against their testimony. The learned judge, after commenting upon these cases in Peck v. Cary (supra) says: "I am satisfied that the doctrine established by these cases and those in this Court is sound, and consonant with the spirit of the statute. A different rule, and one which should require the witnesses always to remember and be able to state affirmatively the several matters required to be done, would render wills the most uncertain of all legal instruments." The precise point as to what was an acknowledgment equal to a sub-scription, was decided in Ellis v. Smith (1 Ves. Jr. 11). That case was decided in 1754 by Lord Chancellor Hardwicke, assisted

by Sir John Strange, Master of the Rolls, and by the Chief Baron of the Exchequer. The principal question was, whether the testator's declaration before the witnesses, that the paper was his will, was equivalent to signing it before them, and it was held that it was.

In the present case the testator declared to the two living witnesses, who gave their testimony, not only that it was his will, but that he had signed it. In Chase v. Kittredge (11 Allen, 49), Gray, J., says : " It is accordingly the well-settled construction, both in England and in this commonwealth, that it is sufficient for the testator, in any form of words, to acknowledge or recognize his signature in the presence of the witnesses, either together or separately, with no attestation clause beyond the single word ' witness,' and without their knowledge what the instrument is." In Nickerson v. Buck (12 Cush. 332) one of the head notes is as follows : " It is not necessary under Rev. Sts., c. 62, § 6, that the attesting witnesses to a will should actually see the testator sign the will ; it is sufficient if they hear him acknowledge it to be his will ; and this acknowledgment may be by acts, if clear and explicit, as well as by words." Justice Dewey, on page 342, says : " All that is necessary for him [the witness] to know from the testator is, that the signature of the will is his or written by his direction, and adopted by him. Hence, if the witness be requested by the testator to sign his name to an instrument as an attesting witness, and the testator declares to the witness that the signature to the will is his, that is abundantly sufficient. But the adjudicated cases go further, and hold that the actual signature by the testator may be made known to the witness in other modes than an express declaration to the witness that the will is his. Any act or declaration that carries, by implication, an averment of such fact, is equally effectual. Hence it has been repeatedly held that a declaration by the testator to the witness, that the instrument is his will, or even a request by him to the witness to attest his will, or other varied form of expression implying that the same had been signed by the testator, are either of them quite sufficient." The same doctrine is held in Ela v. Edwards (16

Gray, Ms.). See also Jauncey *v.* Thorne (2 Barb. Ch. R. 40), and the numerous cases there cited.

The principles and authorities would appear to be decisive of the case now under consideration. At any rate, it was a question of fact whether the requisites of the statute had been complied with, and upon this point the decision of the primary tribunal should be of controlling weight. If we entertained doubts of the correctness of that decision, which we do not in the present case, we should have great reluctance to review the decision of a surrogate upon a question of fact purely. He has had the benefit of a personal inspection of the witnesses, the opportunity of witnessing their manner of giving their testimony, and, in the case of a conflict, is better qualified than an appellate Court to determine where the truth lies, and to whom credence should be given. We are quite clear in the opinion that the correct determination has been arrived at in the present instance.

This Court, in Hoysradt *v.* Kingman (22 N. Y. 372) held that it was not necessary to the due attestation of a will that the witnesses should subscribe in the presence of each other; that it sufficed if each witness subscribed in the presence and at the request of the testator, but severally and apart as respects each other ; and that an acknowledgment by the testator of his signature, and execution of the will, is equivalent to the actual seeing by the witness of the physical act of subscription. It is, therefore, unobjectionable that the attesting witnesses did not sign the attestation clause in the presence of each other, but separately, and on different and distinct occasions.

The decree of the surrogate admitting the will to probate was correct, and the judgment of the Supreme Court should be affirmed, with costs.

All concur.

Affirmed.

JOEL TIFFANY,
State Reporter.