ONONDAGA COUNTY.—HON. G. R. COOK, SURROGATE.— November, 1883.

LYMAN *v.* PHILLIPS.*

*In the matter of the application for revocation of probate of the will of* LEWIS S. PHILLIPS, *deceased.*

A substantial compliance with the statute, 2 R. S., 63, § 40, in the execution of a will, is all that is required. An acknowledgment of the execution by the testator, made to a witness after the latter has signed, is sufficient, where the two acts are performed on the same occasion. The several independent requirements of the statute may be joint in their execution.

Decedent, having written and subscribed the paper purporting to be his will apart from witnesses, took it to the place of business of S., made formal publication in his presence and procured his signature in

* Surrogate's decree affirmed at Gen. Term and in Ct. of Appeals.

attestation.  He then went, with the document, to the office of B., an attorney, told him that it was his will, or his last will and testament, and requested him to sign as a witness, which B. did, the signature of decedent being, at the time, plainly visible.  The evidence showed that decedent's acknowledgment of the character of the instrument was made after B. had signed, and that the latter thereafter told decedent that it was very informally drawn, specifying various objections as to its form and the manner of execution, and advised him to go to some attorney and have a will regularly drawn up; from which views, however, decedent dissented.  B., who omitted to add to his signature a statement of his place of residence, testified that such omission was owing to an impression on his part that, when decedent left the office, he did so with the purpose of having the paper redrawn, and did not regard it as an executed will.  Upon an application to revoke probate, it was contended that the execution was invalid by reason of the failure of decedent to acknowledge it until after B. had completed his signature; and, also, that the latter could not be regarded as an attesting witness.—

*Held*, that the will was duly published in the presence of B., whose signanature, as the second witness, gave to it legality and validity; and that the petition for revocation should be denied.

APPLICATION by Mary J. Lyman and another, next of kin of decedent, for a decree revoking the probate of his will; opposed by Mary B. Phillips, executrix thereof.   The facts appear sufficiently in the opinion.

FRANK HISCOCK, *and* FREDERICK A. LYMAN, *for petitioners.*

A. L. JOHNSON, *and* I. D. GARFIELD, *for respondent.*

THE SURROGATE.—This is an application under § 2647 of the Code of Civil Procedure, on the part of Erastus B. Phillips and Mary J. Lyman, a brother and sister of Lewis S. Phillips, late of the town of Geddes, in the county of Onondaga, deceased, for the revocation of the probate of his last will and testament.

The testator died January 9th, 1883, leaving a will, of which the following is a copy:

" *To whom it may concern :*—Considering the uncertainty of life, I hereby make my last will by which I give and bequeathe all my property and effects, both personal and real, to my wife, Mary Bigelow Phillips, and I hereby appoint her executrix of this my will.  If she should always find it convenient to pay my sister, Caroline Buck, the sum of three hundred ($300) dollars a year during her life, and also to give my brother, Edwin W. Phillips, during his life the interest on ten thousand dollars, (or seven hundred dollars per year,) I wish it to be done.

Dated this 26th day of February, 1879.

LEWIS S. PHILLIPS.

JAMES A. SKINNER,
WM. A. BEACH,      } Witnesses.
JOHN B. STRAUB.

J. B. Straub is clerk in our store."

The will was duly proved in the Surrogate's court of the county of Onondaga, as a will of real and personal estate, on February 21st, 1883, as alleged in the petition herein for revocation of probate of the same.  The testator left him surviving Mary Bigelow Phillips, his widow, Erastus B. Phillips, Edwin W. Phillips, Mary J. Lyman and Caroline Buck, his brothers and sisters, and Stellie Phillips, a daughter of Addison B. Phillips, a deceased brother, his only heirs at law and next of kin, severally of full age. The value of the personal estate of the testator is $100,000.  It was conceded, on the argument, that the testator was sixty-four years of age at the time of his death.

The will of the testator was drawn and signed by him apart from the witnesses, and they signed their names as witnesses to the same in the presence of the testator, but not in the presence of each other. Every word and letter upon the will is in the handwriting of the testator except the names of the three subscribing witnesses thereto. The will is written on one side of a sheet of letter paper, and covers nearly the whole of the same. Upon the trial, no question was raised by the contestants, as to the competency of the testator to make a will; and it appeared, from the evidence of the subscribing witnesses that were sworn, that he was fully competent to make and execute such an instrument, and there was no evidence of fraud or undue influence or coercion.

James A. Skinner and William A. Beach, two of the subscribing witnesses to said will, were called on the part of the proponent, and no witnesses were called on the part of the contestants. The other subscribing witness to said will was not called, and it did not appear, on the trial, whether he was dead or alive. If alive, and he could have recalled any important fact that took place at the time of the execution of the will, he would very likely have been found and called by the proponents or contestants in so important a matter.

There was no conflict of evidence or dispute as to how the will was executed. The only question raised upon the trial and argument was as to whether the testator had complied, in the execution of his will, with § 40, 2 R. S., 63, which is as follows.*

---

* See the section in question quoted on page 100, *ante.*

The statute must be observed and complied with in its several provisions in the execution of a will, and a failure to comply therewith renders the instrument invalid. A substantial compliance therewith, however, is all that is required. It would seem that, after the testator had drawn and signed his will, he took it to the store of the witness Skinner, told him that he wanted him to witness his will, took it from his pocket and laid it in front of Mr. Skinner and said: "this is my last will and testament;" he acknowledged the execution of it, and that that was his signature, and said to Mr. Skinner: "I want you to witness it." Mr. Skinner thought that the testator told him to sign to the left of his signature, and then Mr. Skinner signed his name as a witness to the will. · Mr. Skinner, who was the first witness to the will, says the testator's name was signed to the will when it was brought to his store.

It would seem that the testator then took the will to the law office of the witness William A. Beach laid the will in front of him on the table, told Mr. Beach that it was his last will and testament and that he wanted him to sign it as a witness; that, while the testator was talking, Mr. Beach was writing his name to the will; and that the testator finished talking just as Mr. Beach wrote "h," the last letter of his name. Mr. Beach says that he then told the testator that he thought the paper was very informally drawn, to trust an estate to after he was out of the way, and that, if he were the testator, he would go to some attorney, and have it drawn up in regular form. Mr. Beach says that the testator asked him in what

respect it was informal; and that he told him he thought it was all informal. The testator said he had no fears of it; that he had copied it from a will of somebody that had been contested and stood the test, and that he had no question about it. Mr. Beach says that he then told Mr. Phillips that that might be so, but that the attestation clause was not right; that he had no attestation clause; that the witnessing of it, in his mind, was informal; that he ought to have that part of it redrawn at least and have it witnessed regularly; that the testator then wanted to know what was necessary. Mr. Beach said he told him that, in his opinion, the two witnesses should be there together, and that the testator should sign in their presence, and that they should sign in his presence.

The testator told Mr. Beach that he did not think that he was right upon that. Mr. Beach then told him that he did not know that he was, but that he would avoid all trouble by having it redrawn. The testator then said that he was satisfied that it was done according to law, that he had drawn it in his own handwriting for reasons of his own, and that he had executed it. Mr. Beach then remarked to the testator that it would be better to sign before the witnesses. The testator said it would make no difference, that he had signed it and that it was all right. Mr. Beach then stated to the testator that he would avoid the possibility of any difficulty if it were he. The testator replied that he was sure in his own mind that it was right, but that he would see about it. The testator then took the will and put it in his pocket, they had some little talk about politics, and

the testator left.   Mr. Beach says he finished his sig-
nature after the testator told him what the instrument
was; that the testator's name was signed to the will at
the time.   The testator then told Mr. Beach that he
had made it just as he wanted it; that it expressed
his idea of what he wanted done with his estate; that
he had drawn it himself, and he cautioned Mr. Beach
about saying that he had made a will.   Mr. Beach says
that the testator acknowledged that he had executed
it.   The testator said that he had copied it from a
form, and that it was right, and that he did not think
that it was necessary for the witnesses to be together.
Mr. Beach said he thought the testator was there
fifteen or twenty minutes.   Mr. Beach on his cross-
examination says that the reason why he did not sign
his residence was that he had so strongly criticised
the will, and recommended that it be redrawn, that,
when the testator left his office, he supposed he had
left to have it redrawn; that it left that impression
on his mind, and that he thought that the testator
did not regard it as an executed will.   Mr. Beach
said he could hardly have any understanding upon
that subject, but that he had an impression, coming
from his own criticism, that the testator would have
the will or attestation clause redrawn.

The right to dispose of property by will is an
ancient privilege that has been extended to the citi-
zens of all countries.   It is very evident, in this case,
that the testator intended to avail himself of such
privilege, and make a will disposing of his property
in such manner as he thought proper; and, to make
it more evident to the world as to what his intention

was, he wrote it with his own hand and used his own language (for reasons of his own, as he told Mr. Beach, and it expressed just his idea of what he wanted done with his estate). If he had desired that his estate should pass to his widow and next of kin in such proportions as the law directs, he would have died intestate. There would have been no necessity of his making a will. That he died, supposing he had left behind him a valid instrument disposing of his estate, there can be no doubt, for it would seem that he made every effort within the reach of man to execute such an instrument.

He drew the will himself, signed it, and then went personally about the city for the express purpose of procuring attesting witnesses to the execution of it.

The evidence of the two subscribing witnesses, sworn upon the trial of this matter, leads me to believe that the testator had, in some way, made himself familiar with the law in relation to wills and the execution of the same, for by his will he clearly points out the channel in which he desires his estate to go, in a short and precise manner, and in the execution of his will he seems posted on all the requirements of the law in relation thereto.

Mr. Skinner testified that he knew nothing about the law in relation to the execution of wills, but it would appear that, so far as he was concerned in the execution of this instrument, the statute was observed and literally complied with. The will was signed at the end by the testator. The testator acknowledged his signature, or the execution of the will (either of which was sufficient), said it was his last will and tes-

tament (which was a publication of it), requested Mr. Skinner to sign his name as a witness, told him where to sign to the left of his signature, and Mr. Skinner so signed his name as a witness.

It is claimed, on the part of contestants, (1) that the testator did not acknowledge the execution of this instrument to the witness Beach until after Beach had signed his name to the will, and that the execution is, therefore, invalid; and (2) that the witness Beach cannot be held to be an attesting witness to the will. In England as well as in this country, where the testator signs his name to a will in the absence of the witnesses, he must acknowledge his signature or the execution of the instrument to each of the attesting witnesses, who must be present at the same time, and, in some states and countries, the testator must acknowledge the execution of the instrument to each of the witnesses, even if he does sign in their presence.

Since the decision of the Court of Appeals in Hoysradt v. Kingman (22 *N. Y.*, 372), there cannot be any doubt, if there was any before, that, under our statute, it is not necessary to the due attestation of a will that the witnesses should sign in the presence of each other.

. The English law (1 Vict., ch. 26, sec. 9) is somewhat different from our law, and is as follows: " No will shall be valid unless it shall be in writing and executed in the following manner, viz.: It shall be signed at the foot or end thereof by the testator, or some other person in his presence, and by his direction. Such signature shall be made or acknowledged

by the testator in the presence of two or more witnesses present at the same time. Such witnesses shall attest and shall subscribe the will in the presence of the testator."

The question arises as to what is a sufficient acknowledgment by a testator of the execution of his will where an acknowledgment is required. What constitutes such an acknowledgment should be the same in all countries and states. That question has frequently been before the courts in England and in this country, and decisions made and rendered thereon, as appears from the reports.

In Ellis v. Smith (1 *Ves. Jr.*, 11), decided in 1754, the precise point in the case was as to what was a sufficient acknowledgment by the testator of the execution of his will; whether the testator's declaration before the witnesses that the paper was his will was equivalent to signing before them, and Lord Chancellor HARDWICKE, assisted by Sir JOHN STRANGE, Master of the Rolls, and by the Chief Baron of the Exchequer decided that it was. In Ilott v. Genge (3 *Curteis*, 172, 175), Sir HERBERT JENNER FUST says: "It is not necessary that a testator should state to the witnesses that it is his signature. . The production of a will by a testator, it having his name upon it, and a request to the witnesses to attest it would be a sufficient acknowledgment." .

In Gaze v. Gaze (3 *Curteis*, 457), the testator himself produced the will to the witnesses signed and sealed, and directed them to put their names to it as witnesses. It did not exactly appear whether he used the words—" put your names below mine," or

pointed out the place where their names were to be signed. The witnesses did subscribe the will in the presence of the testator and of each other. Sir HERBERT JENNER FUST says: "There can be no doubt of the intention of the deceased that this paper should operate and take effect as his will." And he held that it was a sufficient acknowledgment.

In Blake v. Knight (3 *Curteis*, 547, 564), Sir HERBERT JENNER FUST says: "I am quite satisfied that the name of the testator was signed to the paper before the witnesses subscribed, and I think that his acknowledging this to be his will, it being all in his own handwriting and his name, as I hold, being then signed to it, amounts to a sufficient acknowledgment of his signature." And he admitted the will to probate. In Inglesant v. Inglesant (*L. R.*, 3 *Prob. & Div.*, 172), the signature of the testatrix was put to the will before one of the witnesses, came into the room. Mrs. Lee, in whose house the testatrix resided, in the presence of the testatrix upon the second witness coming into the room requested him to put his name under the name of the testatrix. The testatrix did not say anything or do anything in reference to the will after the two witnesses were there, and the question was whether the words used by Mrs. Lee could be taken to be the words of the testatrix. Sir JAMES HANNEN says: "The authorities abound, which show that, if the words used by Mrs. Lee had been spoken by testatrix namely an invitation to the witnesses to put their names under the signature of the testatrix, that would have been an acknowledgment sufficient to render the execution valid. Therefore,

the question is whether the invitation given by Mrs. Lee in the presence of the testatrix was equivalent to an invitation by, and, therefore, an act of the testatrix herself." And he held that he must accept the words of Mrs. Lee as the words of the testatrix, and established the will.

In Nickerson v. Buck (12 *Cush.*, 343) [In Mass., the law requires three subscribing witnesses, but the witnesses do not have to see the testator sign nor need they attest in the presence of each other], the testator signed by making his mark, and the two subscribing witnesses did not see him sign. Judge DEWEY held that, "if the witness be requested by the testator to sign his name to an instrument as an attesting witness, and the testator declares to the witness that the signature to the will is his, that is abundantly sufficient. But," he says, "the adjudicated cases go further, and hold that the actual signature of the testator may be made known to the witnesses in other modes than an express declaration to the witnesses that the will is his. Any act or declaration that carries by implication an averment of such fact is equally effectual. Hence it has been repeatedly held that a declaration by the testator to the witness that the instrument is his will, or even a request by him to the witness to attest the will, or other varied form of expression implying that the same had been signed by the testator, are, either of them, quite sufficient."

In Ela v. Edwards (16 *Gray*, 92), the will was drawn by the testatrix, and her name signed thereto, and borne thereupon, in the proper place for attesting witnesses, the names of three persons were duly writ-

ten.   The two that were living testified that the testatrix sought them as witnesses, took the paper from her custody, asked each to sign as a witness, pointed them to the proper place on the left hand side to put their names, had them sign their names in her presence, and then took the paper into her custody. Held, that the will was properly attested.

In Allison v. Allison (46 *Illinois*, 61) [In Ill., two witnesses are required; their statute is similar to ours], the testator signed in the absence of the witnesses and then went out and called Hoyt and Walsh, the subscribing witnesses, to come in and sign a paper. They went in where the testator was ; the draftsman of the will read over the attestation clause, the testator sitting in the room within hearing distance, the testator then handed the pen to Hoyt, who having signed his name, handed it to Walsh, who also signed. The testator said nothing the witnesses could remember.   The chief objection taken to the proof was that the testator did not sign the will in the presence of the witnesses, or acknowledge it to be his act or deed as required by law.   Justice LAWRENCE says : "It is true the testimony shows no formal acknowledgment, in set terms or by words to that effect, and yet the entire transaction amounts to an acknowledgment, as distinct and satisfactory as language could have made it.   The statute does not require the acknowledgment to be in language ; any act which indicates the same thing with unmistakable certainty will answer as well.   Although he uttered not a word, he really acknowledged the instrument to be his will as satisfactorily as if he had said : ' I, Daniel Allison, do

acknowledge this instrument to be my last will and testament.'" Also see Peck v. Cary (27 *N. Y.*, 9), and Nelson v. McGiffert (3 *Barb. Ch.*, 158).

In Brown v. McAlister (34 *Indiana*, 377), Judge WORDEN, quoting from elementary writers, says: "The mere fact that one calls upon a witness to subscribe a paper as a witness of its execution is, no doubt, abundant evidence of his acknowledgment that he executed it." Judge DOWNEY, in the same case, says: "But as it is shown by the facts that the testatrix went to the persons who were chosen by her to be the witnesses, produced the paper already written, told them that she desired them to witness her signature, and thereupon signed the paper in the presence of the witnesses, who then and there wrote their names to it as witnesses, the question in the case is whether or not it is necessary that she should have *stated* to the witnesses that it was her will. I decide that it was not necessary that she should have made such *statement;*" and the will was sustained.

In Randebaugh v. Shelley (6 *Ohio State*, 314, 315) [the statute of Ohio, in relation to the execution of wills, is similar to that of New York], BARTLEY, Ch. J., says: "It was not necessary that the witnesses should attest the instrument in the presence of each other. Neither of the witnesses saw the testator subscribe his name to the paper; one of them, however, heard him expressly acknowledge the same, but the other did not. And the question is presented as to whether the will is to be invalidated because the testator, having subscribed the will in the absence of the witnesses, did not, in express and

direct language say to the witnesses that he had executed it or signed it as his last will and testament. It appears that the witnesses were called in to attest the paper without being informed expressly that the instrument was a will, and upon the paper being presented to him by the testator, with his (the testator's) name written at the end of it, he subscribed his name as a witness at the testator's request. It was not essential to the attestation that the witnesses should have been made acquainted with the particular contents of the instrument. Where an attesting witness does not see the testator subscribe his name to the will, the law requires that he should hear the testator acknowledge the fact of his having subscribed it. This acknowledgment is not required to be made in any particular words or in any particular manner. If by signs, motions, conduct or attending circumstances, the attesting witness was given to understand that the testator had already subscribed the paper as his will, it was a sufficient acknowledgment."

In Robinson v. Smith (13 *Abb. Pr.*, 360, 361), the will was in the handwriting of the testator. Both of the witnesses subscribed their names at the testator's request, in his presence, and in the presence of each other, and the testator declared the instrument to be his last will and testament. The witnesses did not see the testator sign, nor did he, by words, acknowledge it to be his last will and testament. The court says: "Did he in substance do so? Had he subscribed his name before the subscribing witnesses signed? Did the testator and the witnesses know that it was a testamentary instrument? Was the

testator's name visible to it when he laid it on the table in front of the witnesses? I am satisfied that the testator had then signed it, and that the testator and the subscribing witnesses understood that it was a testamentary instrument." The Judge said: "I can hardly conceive how a person could more forcibly and effectually acknowledge the execution of an instrument than by laying it down on a table, with his name to it, saying: 'I declare this to be my last will and testament, and I have sent for you as witnesses, and wish you to sign it as such.'"

In Jauncey v. Thorne (2 *Barb. Ch.*, 40, 65), Chancellor WALWORTH says: "But the production of the will with the testator's name subscribed to it, and in such a way that the signature could be seen by the attesting witnesses, and the request of the testator that they should witness the execution of the instrument as his will, would of itself be a sufficient acknowledgment of his signature, to render the will valid under the provisions of the act which was in force when this will was made.

In Nelson v. McGiffert (3 *Barb. Ch.*, 163), Chancellor WALWORTH says: "Not only the witnesses, but the testator himself, must therefore have understood that they were witnesses to the execution of a will, in conformity to his desire and wish; although he may not have said in terms: 'I request you and each of you to subscribe your names as witnesses to this my will.' If such a formal request were necessary to be proved in all cases, and the witnesses were required to recollect the fact so as to be able to swear to it after any considerable length of time, not one

will in ten would be adjudged valid. In the execution of wills, the statute does not require any particular form of words to be used by the testator, either in the admission of his signature, in the publication of the instrument as his will, or in the communication to the witnesses of his request or desire that they should subscribe their names to the will, as attesting witnesses to the fact of its due execution by him. But it is sufficient if the formalities required by the statute are complied with in substance."

In Coffin v. Coffin (23 *N. Y.*, 10), the witnesses were present at the testator's, on the day the will was executed, by the procurement of the testator, and for the purpose of witnessing his will. When the instrument was ready for execution, they were called into the room where the will was executed. They came there, saw the testator subscribe his name to the will, and signed their names as witnesses. Before doing so, one of the witnesses asked the testator if he requested him to sign as a witness, to which he answered in the affirmative, and both witnesses then signed. COMSTOCK, Ch. J., says: "We apprehend it is clear that no precise form of words addressed to each of the witnesses at the very time of the attestation is required. Any communication importing such request, addressed to one of the witnesses in the presence of the other, and which, by a just construction of all the circumstances, is intended for both, is, we think, sufficient. The statute, in separate and independent clauses, besides the subscription of the testator, requires that he shall declare the instrument to be his last will, and shall request

the witnesses to sign it.   In this case, the publication and request that the witnesses should sign it as such are both included in the testator's answer, when asked if he wished to have the paper attested as his will.   But this objection we think is not fatal.   All that the statute requires is that the act of publication and the act requesting the witnesses to sign shall both be performed.   The acts are distinct in their nature and quality, but their performance may be joint or connected.   If a testator should say to the witnesses : ‘ I desire you to attest this instrument as my last will and testament,’ the language would not only be a request but a clear publication of the will.”

In Baskin v. Baskin (36 *N. Y.*, 418), the will was drawn by the witness Smith, signed by the testator in his presence, and then Smith at the testator's request signed his name as a witness.   Wilsey, the other witness, was then called in from an adjoining room. The will was in sight on the stand.   The testator said to Wilsey that he wanted him to sign his will. Smith then handed the testator his will, and, as he held it in his hand, Smith asked him if he acknowledged that to be his last will and testament, and the testator said that he did acknowledge it to be his last will and testament.   Wilsey then signed his name as a witness.   The Surrogate held that that was not a sufficient acknowledgment of the subscription in the presence of Wilsey, within the meaning of the statute in relation to wills, and refused probate.   The General Term reversed the decision of the Surrogate, and the decision of the General Term was affirmed in the Court of Appeals.   The attestation clause stated that

the will was signed and published in the presence of the attesting witnesses (which was not true as to Wilsey), as it was not signed by the testator in his presence. Judge PORTER, in his opinion, says: "It is clear the testator intended a complete execution of the instrument; that with this view he signed it; that he supposed he was acknowledging that he had done so when he requested Wilsey to attest the truth of the facts stated in the certificate; and that Wilsey so supposed when he certified that he was a witness to the signature as well as to the publication."

In Willis v. Mott (36 *N. Y.*, 486), the head note says: "If the testator presents the will already subscribed by him to the witnesses, acknowledge that he has executed it as such will, that the same is his will, and request him to sign as a witness, and he signs in the presence of the testator, it is sufficient."

In re Harder (1 *Tucker*, 429, 430), Surrogate TUCKER says: "Although this case has been so ably and thoroughly reviewed and argued by the learned counsel retained in it, I cannot see any doubt in the testimony; the simple question is whether the words addressed by the decedent to, and heard by both of the subscribing witnesses, 'will you witness my will,' or 'I want you to witness my will,' constitute a sufficient acknowledgment, declaration and rogation. The rulings of our courts on this subject have been quite uniform and very liberal. It has been held that any communication of the idea, that the instrument is his will, will meet the object of the statute. This knowledge of the nature of the transaction must be evinced with reasonable definiteness by the party executing

the will, so that the testamentary character of the instrument is shown to have been communicated by the testator to the witness. It has been held in many cases in our courts, and appears to be settled law, that a separate acknowledgment of the signature of the testator is not necessary, where the instrument is already signed by him when he acknowledges the instrument to be his will. The greater includes the less, and his acknowledgment that this instrument is his will is held to include and dispense with the acknowledgment that the signature appended to it is his signature."

I have reviewed, to some extent, the decisions of the courts, both in this country and England, as to what constitutes a sufficient acknowledgment by a testator of the instrument as his will, where an acknowledgment is required, and find that the decisions of the various courts upon that subject have been in substantial harmony for more than a century last passed. It seems to be pretty well settled now that almost any word, expression or definite act of a testator said, made or done by him, indicating that he acknowledged or thereby intended to acknowledge, by such word or act, the instrument signed by him as his will, is a sufficient acknowledgment of the instrument as his will.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

In this case, the testator, having drawn and signed his will and had it attested by one witness, took it to Mr. Beach for the sole purpose of having him attest it as a subscribing witness thereto, told him that it was his will or his last will and testament, and requested

him to sign his name as a witness, and Mr. Beach did so sign his name; the signature of the testator was visible on the face of the will, about two inches to the right and nearly opposite to where Mr. Beach signed. This I hold is a sufficient acknowledgment of the testator's signature, and of the execution of the will, a publication of the same and request to sign, and just as effectual as if the testator had said: "I acknowledge this to be my signature, I acknowledge the execution of this instrument as my will, declare it to be my will, and request you to sign as a witness thereto."

These several independent requirements of the statute may be joint in their execution.

· If a person who was about to become a subscribing witness to a will should say to the testator who had signed his will: "Do you acknowledge and declare this to be your last will and testament, and request me to become a subscribing witness thereto;" and the testator should say: "yes," or nod, or bow his assent thereto (for an acknowledgment is but an admission, declaration, assent or confession), it would be a sufficient acknowledgment, publication and request to sign as a witness.

In Baskin v. Baskin (*supra*), the Court of Appeals say: "When, however, the testator produces a paper to which he has personally affixed his signature, requests the witnesses to attest it, and declares it to be his last will and testament, he does all the law requires. It is enough that he verifies the subscription as authentic, without reference to the form in which the acknowledgment is made, and there can be no more unequivocal acknowledgment of a signature

thus affixed than presenting it to the witnesses for attestation and publishing the paper so subscribed to be his will." See Willis v. Mott (*supra*); Jauncey v. Thorne (*supra*); Robinson v. Smith (*supra*); Ilott v. Genge (*supra*); and Matter of Harder (*supra*). I find all these authorities to be in harmony with the doctrine laid down in Baskin v. Baskin. These decisions are not in conflict with that made in Mitchell v. Mitchell (16 *Hun*, 97). In that case, the testator went to the store where the two witnesses were, took out a paper, and said to the witnesses: "I have a paper I want you to sign." One of the witnesses took the paper, partly opened it, saw what it was, and might perhaps have seen the testator's signature. It did not appear that the other witness saw the signature of the testator at all. The testator then said: "This is my will, I want you to witness it;" the two witnesses signed the paper under the attestation clause; the testator then took the paper and said: "I declare this to be my last will and testament." Under the facts of the case, the court very properly held there was, at least as to one witness, if not as to both, no presenting of the signature for attestation, which is essential.

But Mr. Beach testified that the testator did acknowledge that he executed the will. It does not particularly appear, by the evidence, at what period of time during the execution of the will, or conversation in relation to it with Mr. Beach, such acknowledgment was made, and it is claimed by the contestants that such acknowledgment was made after the signing by Mr. Beach, and, as a matter of

fact, I conclude such was the case, and for this reason the contestants claim that the will is invalid. In Doe v. Roe (2 *Barb.*, 200), Van Alstyne, the testator, had procured John Wood to draw his will; two witnesses were sent for, and when they came into the room they were told by Doctor Root, in the testator's presence, that they had been called in to witness the will. Doctor Root then read the will to the testator, and asked him if that was his last will and testament, to which he replied in the affirmative; he then signed the will and the three witnesses subscribed their names to the attestation clause in his presence. HARRIS, P. J., says: "I cannot doubt, then, that when the testator was asked by Doctor Root, after the instrument had been read to him, whether it was his last will and testament, his reply in the affirmative was a sufficient publication of the will to answer the requirement of the statute."

Nor do I regard it as at all material in what order the various steps necessary to constitute a due execution of a will take place. The publication is required to be at the time of signing. The clear intent of the statute is that the testator shall not sign the will at one time and one occasion, and at another time and upon another occasion declare it to be his will; both shall be done at the same time and on the same occasion. But which shall be done first in the order of time,—whether the testator shall declare the instrument he is about to sign his last will and testament or shall first subscribe the paper and then make the declaration of his purpose is immaterial. It is

enough that the two things are not done at different times.

In Leaycraft v. Simmons (3 *Bradf.*, 38), and in Vaughan v. Burford (*id.*, 78), the same doctrine is laid down.   In O'Brien v. Galagher (25 *Conn.*, 231), WAITE, Ch. J., says:   "So far as the question has been noticed in the American courts, the inclination seems to have been to consider the order in which the testator and the witnesses put their names to the will as immaterial, providing the instrument is in all other respects legally executed."   Therefore, it would seem that, under the decisions of the courts, the acknowledgment of the execution of the will by the testator, after the same had been signed by the witness Beach, was sufficient, it having been done on the same occasion of his signing.

The remaining question claimed on the part of the contestants is that the witness Beach cannot be said or held to be a subscribing witness to the will.   The evidence of Mr. Beach shows that he signed the will at the end thereof, as a witness thereto, at the request of the testator and in his presence; that, after so signing his name, he commenced criticising the will, told the testator that it was very informally drawn to trust an estate to after he was out of the way, and that he had better go to some attorney and have it drawn up in regular form.   The testator then asked Mr. Beach in what respect it was informal, and Mr. Beach told him that it was all informal, and the testator said he had no fears of it.

Mr. Beach told him there was no attestation clause, and the witnessing of it was informal.   The testator

wanted to know what was necessary. Mr. Beach replied that, in his opinion, the two witnesses should be there together, and that he should sign in their presence, and they in his presence. The testator then said to Mr. Beach that he did not think he (Mr. Beach) was right upon that, and that he was satisfied it was done according to law; that he had drawn it in his own handwriting for reasons of his own, and that he executed it. Mr. Beach answered that it would be better to sign before the witnesses. The testator said it made no difference, he had signed it and it was all right; that he was sure in his own mind it was all right, but he would see about it.

What did the testator mean when he told Mr. Beach he would see about it? He meant he would see if the will was informally drawn, if it was necessary to have an attesting clause, if the witnessing of it was informal, and if it was necessary for the two witnesses to be together, and he sign in their presence, and they in his. He had told Mr. Beach he had no fears of it, that he was satisfied it was done according to law, that it was not necessary to have the two witnesses together when he executed it, and he was sure in his own mind it was all right. But he would see about it. Inasmuch as he, a lawyer, had raised all these questions, he would see if it had been executed according to law. The testator probably again consulted some law book, or advised with some counsellor, as to whether the will was sufficiently formal and legally executed.

These recommendations made by Mr. Beach to the testator were very appropriate, and, if acceded to by

the testator, would probably have avoided this litigation. They were such recommendations as Surrogates and lawyers frequently make, when consulted for advice by those who have made wills and want to know if they are in proper form and shape.

But such recommendations and criticisms never have the effect of revoking or annulling such instruments after they have been executed. The criticisms and recommendation of Mr. Beach to the testator, that the will be redrawn, were not to make the provisions of the will more favorable to the contestants and next of kin, nor to vary the channel in which the testator had directed his estate should go upon his decease, but simply to save the executrix of the will trouble, when she offered the instrument for probate, from any question being raised as to the formal execution of the will.

It was not that Mr. Beach objected to be a subscribing witness to the will or would be benefited by its being redrawn ; it was simply a friendly criticism from an old friend of the testator, for the benefit of those named in the will. Mr. Beach was satisfied that the reason he did not write his place of residence was that immediately after writing " h," the last letter in his name (and which letter was written after the testator had got through talking, after telling him it was his last will and testament and asking him to sign his name as a witness to the will), he so strongly criticised the will, and recommended that it be redrawn, that, when the testator left the office, he supposed he had left to have it redrawn ; that it left that impression upon his mind, so that he did not write his place

of residence and he thought the testator did not regard it as an executed will.

To the question put to Mr. Beach by Mr. Hiscock: "Did you understand, at that time, that it was a completed transaction, that he was to come back again or that something else was to be done?" Mr. Beach said he could hardly say he had any understanding upon the question. He had an impression, coming from his own criticisms, that the testator would have that part (the attestation clause) of the will at least changed; but that it did not amount to an understanding. There does not seem to be a particle of evidence in this case tending to show that the testator did not regard it as an executed instrument, except that Mr. Beach says he thought the testator did not regard it as an executed will. On the contrary, the evidence of Mr. Beach seems to show very clearly that the testator did regard it as a completely executed instrument, and thereafter procured the name of another subscribing witness thereto; for when Mr. Beach told him it was informal, the testator said he had no fears of it. When Mr. Beach told him he would avoid all trouble by having it redrawn, the testator said he was satisfied it was done according to law, he had drawn it in his own hand for reasons of his own, and had executed it (the testator and two witnesses had previously signed, which made it a complete instrument), and he was sure in his own mind it was all right. This shows that the testator did regard it as an executed will. But what was the effect of what was done? Did the testator go to Mr. Beach's office and ask him to sign his name as a wit-

ness to the instrument for the sole purpose of becoming an attesting witness to his will, and did Mr. Beach subscribe his name thereto at the request of testator, and for the sole purpose of becoming a subscribing witness thereto ? There can be no doubt but that was the intention of the testator and the sole object of his visit, and there is no more doubt but that Mr. Beach signed his name for the sole and only purpose of becoming a subscribing witness thereto, and did thereby become such witness within the meaning of the law. His having commenced writing his name before the testator finished talking was of no consequence, it did not affect the validity of the instrument. His signature as the second witness to the will gave to it life, and made it a legal and valid instrument. Having once become a legal and valid instrument, it remained such at the death of the testator, it never having been revoked by him.

A decree should be made confirming the probate of said will.