Coffin, S.
The contestants contend that the will was not properly executed, taking the statements of Mrs. King to be true, because the testatrix did not acknowledge her signature to Dearborn, one of the witnesses, who did not see her sign her name, and cite on this point the case of Mitchell agt. Mitchell (16 Hun, 97). There the deceased came into the store where the two witnesses were and handed out a paper and said: “ I have a paper that I want you to sign.” One of them took the paper and partly opened it and saw what it was. The witness probably, from his testimony, saw the signature. The testator said: “ This is my will, I want you to witness it.” Then the two witnesses signed the paper under the attestation clause. It does not appear that the other witness saw the testator’s signature. The testator then took the paper and said: “I declare this to be' my last will and testament.” At the time of this transaction the paper had the name of the deceased at the end of the paper, but the witnesses did not see him sign, nor was there any acknowledgment by him of his signature in their presence, unless the facts above stated are such acknowledgment. The court held that there was no acknowledgment of the signature to either of the witnesses and rejected the will. This decision was affirmed on appeal in 77 New York, 596, but by a divided , court.
In Chaffee agt. The Baptist Missionary Society (10 Paige, 85) the testatrix, who had subscribed the will by making her mark, but not in the presence of the attesting witnesses, after-wards, and in their presence, placed her finger on her name and said: u I acknowledge this to be my last will and testament.” It was held that the will was not well executed. This is approved in the case of Willis agt. Mott (36 N. Y., 486). It is difficult to see any distinction between the case of the putting the finger upon the name with the mark and declaring it to be his last will and testament and that of a presentation of a paper with the testator’s signature written by him at the foot of it with a declaration that it is his last *497 will and testament. I am satisfied on the whole that the decision in the case of Mitchell agt. Mitchell required that more should be done than merely requesting the witnesses to subscribe their names to a paper with the name of the alleged testator at the end of it, which he says is his last will and testament. By doing so he complies with only two of the distinct requirements of the statute. The other one, that he shall sign it in them presence, or acknowledge that he has signed it, is as equally distinct and imperative as the others, and in the absence of proof that he did one or the other, the requirements of the statute have not been sufficiently complied with to render it a valid testamentary act. But in the case of Baskin agt. Baskin (36 N. Y., 416) it was held to be a sufficient acknowledgment of the testator’s signature where he produces a paper to which he has personally affixed his name, and requests the witnesses to attest it and declares it to be his last will and testament, and that in so doing he does all that the law requires. This doctrine seems to be distinctly affirmed In the Matter of Will of Phillips (98 N. Y., 267). Curiously it appears from the surrogate’s report of the case in 8 Denio, 459, that the testator did acknowledge his signature to both the witnesses, Skinner and Beach, during his conversation with each of them (And see Rumsey agt. Goldsmith, 3 Den., 494). Hence, although the reasoning of judge Learned in the case of Mitchell agt. Mitchell may seem the stronger, the result reached in 98 New York is controlling here, and assuming that the paper was executed and properly attested in the presence of one witness and presented to the other so executed and attested by him, then if the testimony of Mrs. King is to be regarded as true, it might be held that it was well executed as a will.
But I am unable to bring my mind to a belief of her credibility. She and Mr. Berry are in conflict as to their statements of the transaction. He is one of the leading business men in Mount Vernon, a man of character, intelligence and large experience in affairs, and the same may be said of Mr. Dear- *498 born, while Mrs. King had for many years been a servant, a part of the time in the family of the deceased, could neither read nor write, and was named as a legatee in the alleged will to the extent of $200. Mr. Berry’s statement of the circumstances is substantially this : the deceased came to his store alone and asked him if he would witness her signature, to which he assented. She then produced a paper so folded that only one line of the writing could be seen, to wit, “our names hereto as witnesses this day of , 1882,” and of which he did not read a word, signed her name, and he signed his, and thinks she requested him to write his place of residence after it, which he did. She then said she must go and get Mr. Dearborn to do the same thing, and left his store. There was nothing said by her to impress his mind with the fact that it was an important document. He thinks if she had said it was a will he should have remembered it. She was there only two or three minutes. Under these circumstances it seems to me highly improbable that he was informed of the nature of the instrument, and it was not at all unlikely that a person unfamiliar with the manner of the execution of a will, as the deceased was, as is shown by her signing her name at the foot of the attestation clause and appending to it the abbreviation “adm’x,” should have omitted to state what the paper was, especially in her anxiety to conceal its contents as manifested by her.
Mr. Dearborn^ the other witness, had no recollection of the matter whatever, but recognized his signature, which was written above Mr. Berry’s, apparently for lack of room below it, and although he knew both Mrs. Shaffer and Mrs. King, he does not remember ever seeing them in his store together.
After the lapse of a month from the first examination of these witnesses, Mary A. King was produced as a witness, and was objected to as incompetent, because named as a legatee, to testify concerning any transaction or communication between herself and the deceased. Her examination, how- *499 over, was conducted in such a manner as to avoid the objection. She testified only to conversations in which she took no part, and which had no relation to any transaction between her and the deceased. She was engaged in cleaning house for the deceased, when the latter asked her to go with her to IVlr. Berry’s store as she wanted to see him. It was but a short distance to the store and was, as she states, between two and three o’clock in the afternoon. It strikes one as a singular proceeding for a lady to take a servant from her work at that hour, to accompany her for no apparent reason. She says she went into the store with deceased “ and she shook hands with Mr. Berry and asked him if he would sign her will and testament.” He asked her if she was going to die, and she said “ no.” Then he said “ I will sign it.” So he went with her up to the desk. “ She says they were there about twentyor twenty-five minutes ” (Mr. Berry says not more than two or three) and she, witness, was buying ruffling for deceased. They then went to Mr. Dearborn’s, where deceased u asked him to sign her will,” and he kind of laughed and asked, “ have yon come with the will ? ” and she said, “ certainly.” They then went back to the desk, while the witness bought some salad dressing. - They were at Dear-born’s twenty-five or thirty minutes. This witness when asked to whom she had communicated these facts, for some time insisted that she had told them to no person whatever, but after much questioning admitted that she had to her lawyer, who proved to have been not lier’s, but her son’s, but she claimed that he was her lawyer in this proceeding. She finally, after denying that she had done so, acknowledged that she had also told another counsel in the case. Taking into ■consideration all the facts detailed, the material interest which this witness had at stake, evidenced by her having engaged counsel'to look after it, her alleged recollection of conversations which, had they occurred, would have so impressed the minds of the intelligent gentlemen who signed the paper that they would not have been readily forgotten and who, after much
*500 reflection, are unable to recall anything of the kind, lead me to place no credence in the testimony of Mrs. King. It is a pregnant and important fact that Mr. Berry and Mrs. King differ very materially in reference to what both profess to-recollect well. The former says the deceased requested him to witness her signature; the latter says she asked him to sign her will and testament. Both statements cannot be true. One witness is surely in error and I feel constrained to believe Mr. Berry. Mrs. King professes to give all of the conversation and she does not state that Mrs. Shaffer requested Mr. Berry to witness her signature. The two statements are conflicting and cannot be reconciled, nor can one be taken as amounting to a publication and the other as a request to sign as a witness, thus together making a valid execution. According to her evidence neither of the witnesses was asked by the deceased to sign her will as a witness. That perhaps was not essential, provided the circumstances warranted the inferring of such request. But relying upon the testimony of Mr. Berry,- it must be held that there was no publication- of the instrument as a will and it must therefore be rejected. Ho reference has been made to the attestation clause as an aid in the solution of this matter, as it was manifestly untrue as to one of the witnesses and the other one declares that he did not read a word of it.
The testimony of Mr. Yetman, offered for the purpose of impeaching Mrs. King as to a statement made by her must be disregarded as no sufficient foundation therefor was laid. The evidence supplied by the attorney who drew the will, the object of which was to show that deceased knew the character of the paper, and which was objected to as incompetent under section 835 of the Code, has been disregarded by me as wholly immaterial. The deceased was an intelligent lady and it can hardly be assumed that she did not know the contents and nature of the paper she took to Mr. Berry’s-store; besides such knowledge on her part is shown by the testimony of Harry Skidmore.
*501 An order must be entered denying probate of the paper offered as a will, with costs to proponents and contestants out of the fund to be taxed.